**Mary BROWN, Relator,**

v.

**Honorable Alfred S. GERSON, Judge Respondent.**

**No. 09–89–055 CV.**

Court of Appeals of Texas, Beaumont.

June 15, 1989.

Kermit C. Morrison, Port Arthur, for relator.

W.C. Lindsey, Port Arthur, for respondent.

OPINION

BROOKSHIRE, Justice.

Original petition for writ of mandamus. Mary Brown, the Relator, in her petition for said writ, complains of the Honorable Alfred S. Gerson, in his capacity as Judge of the County Court at Law No. 1 of Jefferson County, Texas. Her petition for mandamus relief, in its basic thrust, is to the effect that the trial judge failed to follow our opinion issued in a cause styled *"Mary Brown (Estate of Pearl Harmon, Deceased) v. Gloria Harmon and Pearl Harmon Sandles"*, our No. 09–88–071 CV—an unpublished opinion.

The prior appeal was to obtain an adjudication to determine the heirship of Pearl Harmon, Deceased. Mary Brown had pleaded for the County Court at Law No. 1 to determine and declare who are the heirs, and the only heirs, of the decedent, Pearl Harmon. Further, Mary Brown petitioned the trial court to determine and declare that the applicant (Mary Brown) had an undivided one-fourth interest in the estate of the decedent. However, after a bench proceeding, at the first trial, the trial court entered a judgment which stated:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Application to Determine Heirship filed by MARY BROWN be and is in all things denied."

In the prior appeal, Mary Brown took the position that the trial court abused its discretion in totally denying the Appellant's Application to Determine Heirship and she argued that the trial court was obligated to determine the heirs of the decedent and their respective shares in the decedent's estate because of the fact that the evidence was uncontroverted and clear. The Appel-

lees countered with the argument that Mary Brown had failed in her proof on the issue of "title to real estate". The Appellees urged, on the prior appeal, that the judgment of the court should be affirmed, resulting in no adjudication of heirship.

Our court pointed out that *TEX.PROB. CODE ANN. sec. 48(a)* (Vernon 1980) provided, in relevant part, that:

"(a) When a person dies intestate owning or entitled to real or personal property ... the court ... may determine and declare in the manner hereinafter provided who are the heirs and only heirs of such decedent, and their respective shares ... in the estate of such decedent...."

Furthermore, our court cited *TEX. PROB.CODE ANN. sec. 54* (Vernon 1980). *Section 54* provides:

"The judgment of the court in a proceeding to *declare heirship shall declare the names and places of residence of the heirs of the decedent, and their respective shares and interests* in the real and personal property of such decedent. If the proof is in any respect deficient, the judgment shall so state." (Emphasis added)

The unpublished opinion reversed and remanded with instructions to the trial court to enter a judgment declaring the heirs of the decedent and their respective shares of the decedent's estate and, also, to affirmatively declare the deficiency of the proof of the applicant. The heirs of the decedent and their respective general shares were uncontroverted. We so noted in a footnote.

On February 7, 1989, the County Court at Law No. 1 signed a judgment declaring the heirship of Pearl Harmon, Deceased. The trial court then found that the decedent, Pearl Harmon, died intestate on December 12, 1957, in Jefferson County, Texas, and, at the time of her death, the said Pearl Harmon left surviving her four children. The four children were:

CURLEY HARMON, son
3606 Tenth Street
Port Arthur, TX 77642
MARY BROWN, daughter
1310—60th Street

Port Arthur, TX 77640
THELMA HARMON FRANCIS, daughter
948 Harding
Port Arthur, TX 77640
JACK HARMON, JR., son
(Deceased, having died on November 26, 1987).

The trial court further found and decreed that, on February 7, 1989, all of the decedent's children were living save and except Jack Harmon, Jr., who died in November, 1987, and left surviving him:

GLORIA HARMON, WIFE
5717 Grant
Port Arthur, TX 77640
PEARL HARMON SANDLES, daughter
990 Cypress Station, Apt. # 109
Houston, Texas 77090.

The trial court ordered and decreed that Curley Harmon had a one-fourth share of the decedent's estate; Mary Brown had a one-fourth share; Thelma Harmon Francis had a one-fourth share; Pearl Harmon Sandles had a one-fourth share, subject to the one-third life estate of Gloria Harmon in realty and the one-third life estate of Gloria Harmon in personalty; that Gloria Harmon had a one-third life estate in and to all realty in the share of Pearl Harmon Sandles and a one-third life estate in and to the personalty in the share of Pearl Harmon Sandles.

In the last decretal paragraph, the trial court decreed that Pearl Harmon died not owning or possessing any interest in the realty known by street address as 5717 Grant, Port Arthur, Jefferson County, Texas, being Lot No. 9, in Block No. 1, of the OAKLAWN ADDITION to the City of Port Arthur, Jefferson County, Texas. In the same judgment declaring heirship, the trial court also stated that *it further found that the applicant, Mary Brown, wholly failed* to show any property owned by Pearl Harmon at the time of her death.

The record clearly shows that Mary Brown, among others, testified that Pearl Harmon died owning property, which was real property, located on Grant Street, in Port Arthur, Texas. Furthermore, a doc-

ument was introduced in evidence, being a Release of a Vendor's Lien. The document, affirmatively and unequivocally, recited that S.E. White, of Jefferson County, on September 27, 1954, by deed of even date, which was duly recorded in the Records of Deeds in Jefferson County, in Volume 950, page 46, had actually granted, sold and conveyed to Pearl Harmon, a feme sole, being a widow, the following described real property:

"Lot Number Nine (9), in Block Number One (1), of OAKLAWN ADDITION to the City of Port Arthur, Jefferson County, Texas, as the same appears upon the map or plat thereof, on file and of record in the office of the County Clerk of Jefferson County, Texas, at Beaumont...."

The instrument further recited that the original promissory note, in the amount of $6,000.00, bearing even date with the deed and payable to S.E. White, had been paid in full to S.E. White, who, at that time, was the legal and equitable owner and holder of the said note. The document recited that S.E. White, being the then legal and equitable owner and holder of the vendor's lien note did thereby release, discharge and quitclaim *unto the said Pearl Harmon, her heirs and assigns,* all the right, title and interest in and to the property described, which the said S.E. White might have or may be entitled to by being the owner and holder of the vendor's lien note.

Upon cross-examination, the record shows that the mother, Pearl Harmon, died at the house located on Lot 9, Block 1, of the OAKLAWN ADDITION to the City of Port Arthur. The record further clearly shows that, at the time of her death, Pearl Harmon was not married to any man. There is also affirmative evidence that Mary Brown paid notes on the property. She stated that she paid as long as she, Mary Brown, lived in the house and even after she had moved out.

The next witness called to the stand by Mary Brown was her brother, Curly (Curley) Harmon. He testified that he lived at 3606 Tenth Street, Port Arthur, Texas, and that he was a son of Pearl Harmon. He also testified that Pearl Harmon died in either 1957 or 1958 and, at the time of her death, she lived on Grant Street in Port Arthur, in an area known as El Vista. Curly Harmon swore that he was living with his mother at the time that she died and that she was living in the house on Grant Street. Curly also testified that his mother, Pearl, had bought that same house. He further testified that when Pearl died she still owned the same property. Curly Harmon, without any objection whatsoever, testified that he owned an undivided one-fourth interest in the Grant Street real property that was owned by his mother at the time of her death. Curly Harmon was not cross-examined.

Gloria Harmon was the next witness. Apparently, at one time, Gloria Harmon and Jack Harmon, Jr., had an agreement to be husband and wife. Gloria Harmon admitted that she was taking care of Pearl Harmon at the time Pearl died and that Pearl was living in the Grant Street house. The record shows the location of that same house to be Lot 9, Block 1, of the OAKLAWN ADDITION to the City of Port Arthur, Jefferson County, Texas. Gloria stated her husband had paid certain notes. Seemingly, these notes were paid after Pearl's demise.

■ We conclude the trial court erred when it declared that the applicant, Mary Brown, had wholly failed to show any property owned by Pearl Harmon at the time of her death. This finding by the learned trial court is clearly wrong. A careful review of the record will show, as a matter of law, that Pearl Harmon, at the time of her death, owned and possessed real property. This was admitted and shown by the testimony of Mary Brown, Curly Harmon and Gloria Harmon, herself. Further, the trial court erred in ordering and decreeing that the decedent, Pearl Harmon, died not owning or possessing some substantial interest, if not all, of the realty known by street address as 5717 Grant, Port Arthur, Jefferson County, Texas, being also Lot No. 9, Block No. 1, of the OAKLAWN ADDITION to the City of Port Arthur, in Jefferson County, Texas. The record proves the contrary as a matter of law.

We conclude that the trial court erred in finding that the evidence presented was insufficient to establish ownership in the decedent, Pearl Harmon, in and to the realty described as Lot No. 9, in Block No. 1, of the OAKLAWN ADDITION to the City of Port Arthur, Jefferson County, Texas, and the trial court erred in finding that the Appellant wholly failed to show any property owned by Pearl Harmon at the time of her death. Furthermore, the trial court erred in decreeing that Pearl Harmon, when she died, did not own or possess the realty known by the street name of 5717 Grant, Port Arthur, Jefferson County, Texas, and being Lot No. 9, in Block No. 1, OAKLAWN ADDITION to the City of Port Arthur, Jefferson County, Texas.

We conclude, as a matter of law, that Pearl Harmon, at the date of her death, was in possession of, and possessed, the realty known by street address as 5717 Grant, Port Arthur, Jefferson County, Texas, and being Lot No. 9, in Block No. 1, of the OAKLAWN ADDITION to the City of Port Arthur, Jefferson County, Texas, and we further conclude that Pearl Harmon, at the date of her death, also owned a substantial interest in (if not all of) the said Lot No. 9, Block No. 1, OAKLAWN ADDITION to the City of Port Arthur, Jefferson County, Texas. Furthermore, under the record before the trial court and before us, the trial court erred and was clearly wrong in finding that the Applicant, Mary Brown, wholly failed to show that any property was owned by Pearl Harmon at the time of her death. We so decide as a matter of law.

Two separate, distinct, important portions of the trial court's judgment are in conflict and mutually destroy each other. The trial court was clearly correct in declaring the heirship of Pearl Harmon, setting out her four children, being as follows:

"CURLEY HARMON, son
3606 Tenth Street
Port Arthur, TX 77642

"MARY BROWN, daughter
1310—60th Street
Port Arthur, TX 77640

"THELMA HARMON FRANCIS, daughter
948 Harding
Port Arthur, TX 77640

"JACK HARMON, JR., son (deceased having died on November 26, 1987)

"That all of Decedent's children are living; SAVE AND EXCEPT JACK HARMON, JR., who died on November 26, 1987, as aforesaid; that upon his death the said JACK HARMON, JR. left surviving him:

"GLORIA HARMON, WIFE
5717 Grant
Port Arthur, TX 77640

"PEARL HARMON SANDLES, daughter
990 Cypress Station, Apt. # 109
Houston, TX 77090".

We acknowledge that facts may be established as a matter of law by the testimony of an interested witness provided that his or her testimony is not contradicted by another witness or by attendant circumstances and the testimony is clear, direct, positive, free from contradictions, inaccuracies and circumstances tending to cast suspicion upon it. *Moss v. Hipp,* 387 S.W.2d 656 (Tex.1965); *Cochran ʹv. Wool Growers Central Storage Co.,* 140 Tex. 184, 166 S.W.2d 904 (1942). The heirship and the heirs, and their shares, in the Estate of Pearl Harmon, Deceased, we conclude, are facts that are established as a matter of law. Mary Brown's testimony fits into the criteria set down by *Moss, supra,* and her testimony is also buttressed and reaffirmed by the testimony of Curly (Curley) Harmon. Indeed, Gloria Harmon does not contradict, in any way, the heirs and the heirship of Pearl Harmon. Gloria was the adverse party. Gloria is bound by her own in-court admissions. Gloria's admissions included her sworn testimony that she was taking care of Pearl Harmon when Pearl died. Gloria also testified that the decedent, Pearl Harmon, was living in the house on the lot located by street address as 5717 Grant Street, Port Arthur, at the time of Pearl's death. Nor can reasonable minds differ as to the truth of the controlling facts of the children, the heirs and

their appropriate shares of Pearl Harmon's estate. *Collora v. Navarro*, 574 S.W.2d 65 (Tex.1978). *See Najera v. Great Atlantic and Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365 (1948).

Accordingly, we conditionally grant Mary Brown's petition for writ of mandamus. The trial court is to delete the following portions of its "Judgement [sic] Declaring Heirship", signed February 7, 1989:

"The Court further finds that the evidence presented by applicant was insufficient to establish ownership in Decedent, PEARL HARMON, in the realty described as Lot No. 9, Block 1, OAKLAWN ADDITION to the City of Port Arthur, Jefferson County, Texas. The Court further finds that the applicant wholly failed to show any property owned by PEARL HARMON at the time of her death.

. . . .

"IT IS FURTHER ORDERED AND DECREED that the Decedent, PEARL HARMON, did not die [sic] owning or possessing the realty known by street address as 5717 Grant, Port Arthur, Jefferson County, Texas, being Lot No. 9, in Block No. 1, of OAKLAWN ADDITION to the City of Port Arthur, in Jefferson County, Texas."

The writ of mandamus will issue only if the trial judge refuses or declines to delete the two paragraphs of his judgment set out immediately above. These deletions are to be completed timely and seasonably.

BURGESS, Justice, dissenting.

I respectfully dissent. On March 2, 1989, a unanimous court originally denied leave to file this mandamus. Later, on March 15, 1989, the majority granted a motion to reconsider. I believe our original determination was correct.

Relator's complaint is the trial court failed to follow our earlier opinion and entered a judgment resolving the issue of title to real estate. This court addressed that issue previously in a unanimous opinion wherein this writer stated:

"The effect of the trial court's denying the application was to resolve the contro-versy, in this litigation, concerning the title to the real property described in the application. *TEX.PROB.CODE ANN. sec. 5A(a)* (Vernon 1980). Appellant does not challenge this particular aspect of the judgment, only the trial court's failure to determine the heirs. We therefore reverse and remand with instructions to the trial court to enter a judgment declaring the heirs of the decedent and their respective shares of decedent's estate and affirmatively declaring the deficiency of the proof of applicant's title to the real estate.[1]"

"[1] The heirs of the decedent and their respective heirs were uncontroverted."

The majority establishes a worrisome procedural precedent by granting this mandamus. As previously noted, this court held that relator did not challenge, in the original appeal, the trial court's resolution of the title to the real property. Relator did not file a motion for rehearing and our mandate issued. Thus, the trial court was left to comply with our judgment; which I believe he did. The majority apparently feels the original appeal was decided incorrectly. If the majority allows the use of mandamus against a trial judge to correct their own perceived error, there can be no true finality of judgments. Having denied the motion for leave to file, I would deny the petition. Because the majority decides otherwise, I respectfully dissent.