**T–N–T MOTORSPORTS, INC., Roy Terpstra and Joe Terpstra, Appellants,**

v.

**HENNESSEY MOTORSPORTS, INC., Appellee.**

**No. 01–97–00815–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 12, 1998.

Rehearing Overruled March 13, 1998.

Michael K. Hurst, Marcie Lande Romick, Dallas, for Appellants.

William C. Norvell, Scott D. Marrs, Bruce Charles Morris, Houston, for Appellee.

Before TAFT, MIRABAL and SMITH,* JJ.

## OPINION

TAFT, Justice.

This is an interlocutory appeal[1] from the grant of a temporary injunction against appellants, T–N–T Motorsports, Inc., Roy Terpstra, and Joe Terpstra. We address: (1) whether the trial court abused its discretion in enjoining former employees from using information regarding, or working on, three types of motor vehicles they had worked on for their former employer; and (2) whether the temporary injunction is over-

broad. We reform, and affirm the temporary injunction as reformed.

### Facts

In 1991, John Hennessey founded Hennessey Motorsports, Inc. (appellee), which specializes in high performance upgrades for a variety of vehicles, including the Dodge Viper Roadster and Dodge Viper GTS coupe. By May 1993, appellee had designed its first custom performance and enhancement package for a Dodge Viper.[2] In late August 1993, appellee hired Roy Terpstra to assist in meeting the increased demand for the Venom upgrades and to perform research and development. In April 1994, appellee hired Joe Terpstra to again meet increased demand for its products.

In 1996, the Terpstras incorporated their part-time body shop as T–N–T Motorsports, Inc. Prior to T–N–T's incorporation, the Terpstras worked for T–N–T as well as for appellee, with appellee's knowledge. During this time period and with appellee's consent, T–N–T manufactured and designed products that it sold to appellee for use in connection with the Venom upgrades. Also with appellee's knowledge, T–N–T performed engine modifications for customers other than appellee's, although not on Vipers.

On May 20 1997, the Terpstras terminated their employment without notice to appellee, and began full-time employment with T–N–T. On May 30, 1997, Roy Terpstra attended a Viper Club meeting in Florida at which he distributed T–N–T business cards and T–N–T brochures advertising the availability of high grade performance upgrades for Vipers. Roy Terpstra told a private investigator hired by appellee that the T–N–T upgrades were identical to the Venom upgrades, that he had learned how to create these packages as an employee of appellee, and that he offered the same upgrades as appellee but at a better price. He said at least three of appellee's customers had already moved their

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (Vernon 1997).

2. Appellee has designed and installed a number of Viper upgrade packages (each of which uses "Venom" in its name), which collectively shall be referred to as the Venom upgrades.

business to T–N–T. He also told the investigator that appellee was his only competitor.

In addition to using the same products and vendors, T–N–T also planned to perform the same tests and have an identical warranty on its cars as appellee, and use the same type of equipment that appellee used. T–N–T intended to use a similar name for its packages ("Serpent" instead of "Venom").

In June 1997, appellee sued appellants and successfully obtained temporary injunctive relief.

## Standard of Review

 The sole issue before a trial court in a temporary injunction hearing is whether the applicant may preserve the status quo, pending trial on the merits. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Manufacturers Hanover Trust Co. v. Kingston Inv. Corp.,* 819 S.W.2d 607, 610 (Tex.App.—Houston [1st Dist.] 1991, no writ).

 We limit our review of the grant or denial of a temporary injunction to determining whether the trial court clearly abused its discretion in entering the interlocutory order. *Rugen v. Interactive Bus. Sys., Inc.,* 864 S.W.2d 548, 551 (Tex.App.—Dallas 1993, no writ); *Manufacturers Hanover,* 819 S.W.2d at 610. We will not substitute our judgment for that of the trial court, but will only determine whether the court's action was so arbitrary as to exceed the bounds of reasonable discretion. *Rugen,* 864 S.W.2d at 551. We draw all legitimate inferences from the evidence in the light most favorable to the trial court's order. *Id.* Because an appeal of an order granting or denying a temporary injunction is an appeal from an interlocutory order, the merits of the applicant's case are not presented for appellate review. *Rugen,* 864 S.W.2d at 551; *Manufacturers Hanover,* 819 S.W.2d at 610.

## Abuse of Discretion

In points of error one through five, appellants challenge the sufficiency of the evidence supporting the trial court's findings that appellee demonstrated (1) substantial probability of success on the merits, (2) probable injury in the interim, (3) substantial risk of imminent harm, (4) substantial risk of irreparable injury, and (5) absence of any adequate remedy at law. In point of error six, appellants complain the court erred as a matter of law in determining that appellee met the requisite elements of preliminary injunctive relief. In points of error seven through 12, appellants challenge the trial court's findings regarding appellee's confidential information, and assert no identifiable "trade secrets" exist that might be subject to misappropriation.

The basis of appellee's underlying suit is that, by virtue of their employment with appellee, the Terpstras acquired confidential information,[3] which they then used to compete directly with appellee. Appellee sued appellants alleging misappropriation and conversion of confidential information, breach of fiduciary duty, breach of contract, breach of confidential relationship, tortious interference with prospective relations, civil conspiracy, fraud or fraudulent concealment, and negligence or negligent misrepresentation.

Appellants' concerns are for their right to earn a livelihood in their area of expertise in competition with their former employer. Appellants invoke the free enterprise system as a basis for limiting the general right of former employees to wide-open competition with former employers only where employers have obtained: (1) covenants not to compete; or (2) confidentiality agreements. *See MPI Inc. v. Dupre,* 596 S.W.2d 251, 254 (Tex.Civ. App.—Fort Worth 1980, writ ref'd n.r.e.). We deal here with a third exception to the general rule, which is one designed to protect the trade secrets of a former employer in the absence of a confidentiality agreement.

### A. Trade Secrets

 Certain duties, apart from any written contract, arise upon the formation of

---

**3.** Appellee defines the confidential information to include assembly techniques, compilation of products, customer information, design information, future product information, installation techniques, machining specifications, manufacturing processes, performance specifications on component parts, pricing information, product compositions, product specifications, servicing procedures and specifications, testing methods and results, and vendor information.

an employment relationship. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600 (Tex.App.—Amarillo 1995, no writ). One of those duties forbids an employee from using confidential or proprietary information acquired during the relationship in a manner adverse to the employer. *Id.* This obligation survives termination of employment. *Id.* Although this duty does not bar use of general knowledge, skill, and experience, it prevents the former employee's use of confidential information or trade secrets acquired during the course of employment. *Id.* at 600–601; *American Precision Vibrator Co. v. National Air Vibrator Co.*, 764 S.W.2d 274, 278 (Tex. App.—Houston [1st Dist.] 1988, no writ).

When a claim of improper disclosure or use of trade secrets arises from a confidential relationship, the injured party is not required to rely upon an express agreement that the offending party will hold the trade secret in confidence. *Gonzales v. Zamora*, 791 S.W.2d 258, 265 (Tex.App.—Corpus Christi 1990, no writ). However, the employer must show that the information was, in fact, a trade secret. *American Precision*, 764 S.W.2d at 279.

A trade secret may consist of any formula, pattern, device, or compilation of information that is used in one's business, and which gives one an opportunity to obtain an advantage over competitors who do not know or use it. *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996); *Rugen*, 864 S.W.2d at 548. "A trade secret may be a device or process which is patentable; but it need not be that. It may be a device or process which is clearly anticipated in the prior art or one which is merely a mechanical improvement that a good mechanic can make." *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 158 Tex. 594, 314 S.W.2d 782, 789 (1958). When money and time are invested in the development of a procedure or device that is based on an idea which is not new to a particular industry, and when that certain procedure or device is not generally known, trade secret protection will exist. *K & G Oil Tool*, 314 S.W.2d at 785; *Gonzales*, 791 S.W.2d at 264. Further, when an effort is made to keep material important to a particular business from competitors, trade secret protection is warranted. *Rugen*, 864 S.W.2d at 552; *Gonzales*, 791 S.W.2d at 265. Items such as customer lists, pricing information, client information, customer preferences, buyer contacts, market strategies, blueprints, and drawings have been shown to be trade secrets. *Miller Paper*, 901 S.W.2d at 601; *American Precision*, 764 S.W.2d at 278.

The word "secret" implies that the information is not generally known or readily available. *Rugen*, 864 S.W.2d at 552; *Gonzales*, 791 S.W.2d at 264. Courts have refused to give trade secret protection when the material or procedure sought to be protected has been publicly disclosed. *Gonzales*, 791 S.W.2d at 264. The mere fact that knowledge of a product may be acquired through inspection, experimentation, and analysis does not preclude protection from those who would secure that knowledge by unfair means. *K & G Oil Tool*, 314 S.W.2d at 788; *Weed Eater, Inc. v. Dowling*, 562 S.W.2d 898, 901 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

Appellants assert that they are merely utilizing general knowledge and expertise acquired through years of experience within the automotive industry, both prior to and during their tenure with appellee. They also contend that a lack of secrecy prevents appellee's alleged confidential information from being trade secrets. They assert that the specifications of the performance upgrades and the identities of appellee's customers and vendors are available to the public, and are common knowledge through publication of various magazine articles about appellee's upgrades and via appellee's Internet website. However, Roy Terpstra admitted John Hennessey told him the information he learned on behalf of appellee about designing, modifying, and building the Venom upgrades was proprietary.

The idea of upgrading the performance of any vehicle is not a new idea. However, the specific means by which appellee upgrades the performance of the Vipers is not common knowledge. Hennessey explained that through years of trial and error, appellee

builds the "fastest normally aspirated [4] Vipers." He knows which components work and which do not. Appellee spent a substantial amount of time and money developing the upgrade packages that would fit the exact needs of its clientele. Hennessey testified that the component parts used by appellee in its upgrade packages are confidential. Many components are not available and need to be built from the ground up. Although materials for these parts are purchased from outside vendors, most parts are then modified to fit together and work in concert with all the other components to achieve the desired horsepower, so that the car performs reliably and is cost efficient and profitable. Even appellee's customers are not told the exact specifications of the work done on their vehicles.

Hennessey testified it has taken him four years to compile a list of vendors he considers capable of providing the materials and service he needs, who have the best prices, and who are the most reliable. Although retail prices are public, the overall cost of the Venom upgrades, the cost of items sold separately, the cost of components and sub-assemblies, and the cost of labor associated with assembling and process development is not public.

█ Contrary to appellants' assertions, the specifics of the Venom upgrades, appellee's customer and vendor information, and appellee's pricing are not known to the general public. The magazine articles and appellee's website do not reveal how the various parts are assembled, or explain the process of designing or modifying the various parts that go into a Venom upgrade. There is no access to this information except through appellee.

Hennessey testified that only certain people within the company have access to and were trained to use its computer systems. Computers containing certain information are located in a locked room separate from employees. Access to the customer database requires a password. Appellee's customer database contains information such as names, addresses, and telephone numbers, the types of vehicles they own, whether other upgrades have been done on the vehicle, birthdays, and e-mail addresses. Hennessey testified that some customers even leave instructions not to tell their wives how much money was spent on the upgrades. Although appellee purchases a list of new vehicle buyers from an outside source, this information is contained in a separate database from its customer list. The customer list has been compiled over a four-year period, and appellee does not sell it to outsiders.

Appellee's shop is a large, non-air-conditioned airplane hangar. Hennessey stated the shop is at a remote location because he does not want off-the-street customers wandering in. The airport has a secured access gate from 6:00 p.m. to 6:00 a.m. that requires a code for entry. Non-employees are allowed in the shop area only after they have checked in with the office. Cylinder heads and specific components are kept in a separate area from the shop.

The record indicates the information about the specifics of the Venom upgrades, appellee's customers, and its vendors is confidential and intended to be kept a secret. The court did not abuse its discretion in determining that appellee had shown a probability of success in proving that its confidential information deserved trade secret protection.

### B. Temporary Injunction

█ At the preliminary hearing, the applicant is not required to prove it will prevail at final trial. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968). To be entitled to a temporary injunction, an applicant must plead a cause of action, show a probable right to recover on that cause of action, and show a probable injury in the interim. *Sun Oil*, 424 S.W.2d at 218; *Manufacturers Hanover*, 819 S.W.2d at 610. The applicant also must show that no adequate legal remedy exists. *Manufacturers Hanover*, 819 S.W.2d at 610.

█ A probable right of success on the merits is shown by alleging a cause of

4. "Normally aspirated" means that no additional means are used to increase power to the motor; the car uses only the power from the motor itself.

action and presenting evidence that tends to sustain it. *Miller Paper Co.*, 901 S.W.2d at 597. Probable injury includes elements of imminent harm, irreparable injury, and no adequate remedy at law for damages. *Surko Enters., Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex.App.—Houston 1989, no writ). A legal remedy is inadequate if damages are difficult to calculate or their award may come too late. *Miller Paper*, 901 S.W.2d at 597.

▇▇ Prior to leaving appellee's employ, Roy Terpstra was the director of Viper operations, and he admitted this was a position of trust. He performed specialized performance upgrades on vehicles, and designed, developed, tested, and assembled parts for the Venom upgrades. He worked with Hennessey in strategizing product development. He admitted that both T–N–T and appellee were in the business of custom high performance upgrades.

Although he had the knowledge to build the same various upgrades done by appellee for other vehicles prior to his employment with appellee, Roy Terpstra had never designed, modified, or built certain parts specifically for the Viper. It was while employed by appellee that he learned about Viper upgrades. He located vendors who could fabricate, modify, or supply parts for the upgrades for different types of vehicles, and he knew who were the best and most reliable. He also learned how to increase the horsepower of a vehicle, such as the Viper, because of the research and development done at appellee's shop. He admitted that the Venom upgrades took time and money to develop, and it was appellee who paid for product development.

The Terpstras did not, and were not required to, sign any agreement not to compete or confidentiality agreement. But a former employee may not use, for his own advantage and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment. *Rugen*, 864 S.W.2d at 551. "Injunctive relief is recognized as a proper remedy to protect confidential information and trade secrets." *Id.* The record supports the court's conclusion that appellee demonstrated a likelihood of success on the merits of its claims against appellants.

The record indicates that appellants possess appellee's confidential information and are in a position to use it to compete directly with appellee. Under these circumstances, it is likely appellants will use the information to appellee's detriment. The record supports the court's conclusion that use of this information by appellants to perform services on the two types of Dodge Vipers or the Mitsubishi 3000 GT poses an inherent threat to the disclosure or use of appellee's trade secrets.

▇▇ Appellants argue that any damages suffered by appellee are compensable through money damages, and, therefore, appellee has not demonstrated that no adequate remedy at law exists. Injunctive relief is proper to prevent a party, which has appropriated another's trade secrets, from gaining an unfair market advantage. The only effective relief available to appellee is to restrain appellants' use of its trade secrets and confidential information pending trial. At the time of the injunction hearing, appellee had over 20 Vipers in its shop. Hennessey stated that if the Venom upgrades could be obtained anywhere, there would be no reason for people to send their Vipers to appellee. He testified that if the confidential information was distributed, appellee would lose its advantage. He estimated that appellee's gross sales for 1997 would drop from approximately $4 million to about $2 million. He also said the loss of good will was immeasurable. The potential damage to appellee's business cannot be easily calculated; therefore, a legal remedy is inadequate.

We hold that appellee satisfied its burden so that the trial court did not abuse its discretion by granting the temporary injunction against appellants. Accordingly, we overrule points of error one through 12.

### Injunction Overbreadth

In point of error thirteen, appellants contend the court granted relief that was not specifically sought by appellee. Specifically, appellants assert the decretal paragraphs of the injunction make no mention of the confidential information as defined by the court.

In point of error fourteen, appellants contend the court granted broader relief than was necessary. Appellants argue that the injunction is not limited to appellee's alleged trade secrets or confidential information. Instead, appellants assert, the injunction restrains not only them, but other nondisclosed and nonascertainable entities from disclosing, using, selling, or testing any information related to the two types of Dodge Vipers or the Mitsubishi 3000 GT. Appellants also contend the injunction prevents them and various other parties from working on or providing any type of service for Dodge Viper GTS, Dodge Viper Roadster, or Mitsubishi 3000 GT vehicles. Appellants assert that, read literally, the injunction would prevent former customers of appellants from even changing the oil or rotating the tires on their own cars.

Rule 683 of the Texas Rules of Civil Procedure provides:

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or · participation with them who receive actual notice of the order by personal service or otherwise.

Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought. The appeal of a temporary injunction shall constitute no cause for delay of the trial.

TEX.R. CIV. P. 683.

The injunction tracks this language by including within its scope appellants, "their officers, agents, servants, employees, representatives, attorneys, and all persons, firms, corporations or other entities, acting or purporting to act in concert or participation with any of them who receive actual notice of this Order by service or otherwise...." The injunction does not impose any restraint on individuals or entities other than appellants, except to the extent others act or purport to

act in concert or participation with appellants.

The trial court found that:

[Appellee's] trade secrets include the compilation of certain assembly techniques, design information, future product information, installation techniques, machining specifications, manufacturing processes, performance specifications on component parts, wholesale pricing information, product compositions, product specifications, servicing procedures and specifications, testing methods and results, customer and vendor information regarding customer performance enhancements (defined as any custom enhancements made for the purpose of improving the performance and horsepower of the motor vehicle) that [appellee] performs on Dodge Vipers and Mitsubishi 3000 GT motor vehicles (collectively the "Hennessey Trade Secrets")....

However, as appellants observe, the temporary injunction did not enjoin appellants from using or disclosing *only* trade secrets or confidential information. The pertinent portion of the order restrains appellants from:

1. directly or indirectly disclosing, using, selling or testing, for any purpose, (or imparting to any other person, firm, corporation or other entity) *any information* relating to the Dodge Viper GTS, Dodge Viper Roadster or Mitsubishi 3000 GT motor vehicles; and

2. working on, designing, repairing, installing, testing, soliciting, contacting, accepting any business from and/or providing *any types of services* on any Dodge Viper GTS, Dodge Viper Roadster or Mitsubishi 3000 GT motor vehicles, regardless of model year, except that Defendants may finish the work they were doing on the remaining Dodge Vipers owned by Ken Addington and Joe Bob Shirley.

(Emphasis added.)

■ We agree with appellants that the temporary injunction is overbroad. We may modify an overbroad injunction. *See San Augustine Ind. Sch. Dist. v. Woods*, 521 S.W.2d 130, 133 (Tex.Civ.App.—Tyler 1975, no writ). Accordingly, we sustain appellants' thirteenth and fourteenth points of error and

grant appellants their alternative relief. We order that the above portion of the temporary injunction be reformed to limit disclosure and use of trade secrets, as follows:

1. directly or indirectly disclosing, using, selling or testing, for any purpose, (or imparting to any other person, firm, corporation or other entity) any *Hennessey Trade Secret* information relating to the Dodge Viper GTS, Dodge Viper Roadster or Mitsubishi 3000 GT motor vehicles; and

2. working on, designing, repairing, installing, testing, soliciting, contacting, accepting any business from and/or providing any types of services *using Hennessey Trade Secret information* on any Dodge Viper GTS, Dodge Viper Roadster or Mitsubishi 3000 GT motor vehicles, regardless of model year, except that Defendants may finish the work they were doing on the remaining Dodge Vipers owned by Ken Addington and Joe Bob Shirley.

(Emphasis on language ordered to be added.)

### Conclusion

We reform the order of the trial court granting a temporary injunction against appellants and affirm the order as reformed.