IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-08-00240-CV

 

In re
XTO Energy, Inc.

 

 



Original Proceeding

 



ABATEMENT ORDER










 

            XTO Energy, Inc. filed an original
mandamus proceeding against H. D. Black, then the judge of the 77th District
Court.  However, Judge Black retired and is no longer the sitting judge of the
district court.  On January 1, 2009, Patrick Simmons became the sitting judge
of the 77th District Court.

            Judge Simmons is substituted as the
respondent in this original proceeding.  Tex.
R. App. P. 7.2 (a).  Because this is an original proceeding, we set
aside the submission and abate this proceeding to allow Judge Simmons to
consider anew the issues decided by Judge Black.  Id. at (b); In re
Baylor Med. Ctr. at Garland, 2008 Tex. LEXIS 762, 51 Tex. Sup. J. 1334 (Tex. 2008) (“Mandamus will not issue against a new judge for what a former one did.”).

            Judge Simmons must sign an order
indicating his ruling on the issues which are the subject of this discovery
dispute and provide a copy of that order to all parties within seven days after
it is signed.  XTO Energy must supplement the record in this proceeding with a
sworn or certified copy of the trial court’s order and other material, if any,
needed to resolve this proceeding within 28 days of the date the trial court
signs the written order.[1]

            Supplemental or amended briefs, if
necessary, must be filed by XTO Energy with this Court within 35 days from the
date of the trial court’s decision on reconsideration and by Homer Merriman,
the real-party-in-interest, 28 days after XTO Energy’s brief is filed.

            Further, we direct the attention of
the parties to a recent opinion by this Court, In re Williams, issued on
 March 4, 2009.  In re Williams, No. 10-08-00364-CV, 2009 Tex. App. LEXIS 1561 (Tex. App.—Waco Mar. 4, 2009, orig. proceeding).  A copy of the opinion is attached for the convenience of the parties.  The parties are requested
to supplement their briefs, if any, to address the impact, if any, of this
Court’s opinion in In re Williams on this proceeding. 

 

                                                                        PER
CURIAM

Before
Chief Justice Gray,

            Justice
Reyna, and

            Justice
Davis

Appeal
abated

Order
issued and filed April 15, 2009









[1] By
this order, we do not mean to imply what ruling on the merits of the discovery
issue is or would be appropriate.  Obviously, if XTO Energy is satisfied with
the ruling on reconsideration, we will entertain a motion to dismiss the
petition.








0.5(b), and failed to provide a good-faith
explanation for the untimely filing.  We previously found, with Chief Justice
Gray dissenting, that Lockhart’s motion provided a reasonable explanation for
the untimely filed notice of appeal and granted an implied motion for extension
of time to file the notice of appeal.  See Lockhart v. McCurley, No.
10-09-00240-CV (Tex. App.—Waco Oct. 12, 2009, order) (citing Houser v.
McElveen, 243 S.W.3d 646, 646-67 (Tex. 2008) (per curiam), Verburgt v.
Dorner, 959 S.W.2d 615, 617 (Tex. 1997), In re B.G., 104 S.W.3d 565,
567 (Tex. App.—Waco 2002, order)); see also Lockhart v. McCurley, 298 S.W.3d 449 (Tex. App.—Waco
2009) (Gray, C.J., dissenting).

Second, Midlothian contends that in Lockhart’s
motion for extension, he “judicially admitted” that his appeal is moot. 
Specifically, Lockhart explained that he was “assessing his rights under the
[injunction] order, and seeking clarification of the Court’s rulings,” when a
visiting judge signed a discovery order.  Although the discovery order was
subsequently withdrawn, Lockhart explained that the discovery order prompted him
to appeal.  Lockhart further explained that he “sought additional clarification
from the Court and determined that such an appeal to this Court is required.”  Reading
his motion in its entirety, it appears that Lockhart intended to appeal the
injunction order.  His appeal of the injunction order is not moot.  See Allstate Ins. Co. v. Hallman, 159 S.W.3d 640, 642-43 (Tex. 2005).

INJUNCTION ORDER

            An injunction order shall:
(1) set forth the reasons for its issuance; (2) be specific in terms; and (3)
describe in reasonable detail and not by reference to the complaint or other
document, the act or acts sought to be restrained.  See Tex. R. Civ. P.
683.  Because an appeal
from a temporary injunction is interlocutory, we may not consider the merits of
the underlying lawsuit.[2] 
See Davis v. Huey, 571 S.W.2d 859, 861 (Tex. 1978).

The injunction order in this case
enjoins Lockhart from “soliciting any insurance product-related business from,
or initiating any insurance product-related contact or communication with,
those specific Midlothian [] clients:”

[W]hom Lockhart served;

 

[W]ith whom Lockhart dealt;

 

[W]ith whom Lockhart represented or
conducted Midlothian-related business; and/or

 

[W]hose confidential information became
known to Lockhart, or to which Lockhart possessed unfettered access, in
relation to Lockhart’s activities as Midlothian sales employee;

 

[A]s of the August 30, 2007 execution
date of the [employment contract] into which Midlothian and Lockhart
mutually-entered (excluding Lockhart’s family and relatives, as well as, any
Midlothian client who has executed, or who in the future may execute, account
and/or policy transfer documentation, without the encouragement or aid of
Lockhart, his agents, representatives, assigns, et al.)  

 

The trial court further prohibited
Lockhart from:

[A]ccepting business from any Midlothian
client whom Lockhart solicited outside the August 30, 2007, contractual
authorizations or consent of Midlothian.

 

[U]sing, disclosing, or transmitting for
any purpose, including solicitation of Midlothian’s clients or accounts, the
information contained in the records of Midlothian, including but not limited
to, confidential information concerning Midlothian’s clients, including but not
limited to, the names, addresses, and policy information (policy limits, policy
premiums, policy expiration dates, etc.) of said clients, known to Lockhart, or
to which Lockhart possessed access, in relation to Lockhart’s activities as a
Midlothian sales employee, as of the execution date of the above-referenced
Contract of Employment.

 

The order does not enjoin Lockhart from
“soliciting any insurance product-related business from, or initiating any
insurance product-related contact or communication, with those clients whom
Lockhart sold insurance-related products prior to Lockhart’s and Midlothian’s
entrance into their initial 2003 business relationship and who meet each of the
following criteria:”

[C]lients with whom Lockhart’s sales
relationship was initiated and continuously existed – without interruption
– from the above-referenced 2003 date, through the termination date of the Contract
for Employment; AND

 

[C]lients with whom Lockhart served,
dealt, and/or represented on a continuous and uninterrupted basis during said
period; AND

 

[C]lients whose confidential information
became known to Lockhart, or to which Lockhart possessed access, in relation to
Lockhart’s activities as insurance representative, prior to said time period.  

 

Nor does the order enjoin Lockhart from
“soliciting any insurance product-related business from, or initiating any
insurance product-related contact or communication with, those Potential
Clients of Midlothian, with whom Midlothian possessed no live contractual
relationship.”

Lack of Geographic Limitation

In issue one, Lockhart contends that the
injunction order is overbroad for lack of a geographic limitation.

The temporary injunction order is not an
“industry-wide and worldwide restriction,” as Lockhart alleges.  Rather, it is limited
to specific “Midlothian Insurance Agency clients.”  This limitation is a
sufficient alternative for a geographic limitation.  See Gallagher Healthcare Ins. Servs. v.
Vogelsang, No. 01-07-00478-CV, 2009 Tex. App. LEXIS 6838, at *33-37
(Tex. App.—Houston [1st Dist.] Aug. 21, 2009, no pet.); see also Totino v.
Alexander & Assocs., No.
01-97-01204-CV, 1998 Tex.
App. LEXIS 5295, at *9-16 (Tex. App.—Houston [1st Dist.] Aug. 20, 1998, no pet.). 
We overrule issue one.

 

 

Lack of New Consideration

In issue two, Lockhart argues that the
injunction order is “based on an illusory and unenforceable contract” because
the agreement is unsupported by new consideration.  The enforceability of the
non-compete clause, however, is not before us.  See Loye v. Travelhost, Inc., 156 S.W.3d 615, 619 (Tex. App.—Dallas
2004, no pet.); see also FH1 Fin. Servs. v. Debt
Settlement Am., Inc., No.
10-06-00167-CV, 2007 Tex.
App. LEXIS 6502, at *4-5 (Tex. App.—Waco Aug. 15, 2007, no pet.) (mem.
op.).  We overrule issue
two.

Unreasonable Restraint on Trade

In issue three, Lockhart alleges that
the order purports to prohibit him from using the “professional contacts and
relationships” that he has developed during his years of working in the
insurance industry; thus, it is an “unreasonable restraint on trade and his
ability to earn a living.”

Courts have upheld similar provisions
prohibiting a former employee from soliciting the employer’s customers or
disclosing the employer’s confidential information.  See Rugen v. Interactive Bus. Sys., Inc., 864 S.W.2d 548, 550 (Tex.
App.—Dallas 1993, no pet.); see also Totino, 1998 Tex. App. LEXIS
5295, at *2-3.  These types of prohibitions do not “enjoin competition” because
they do not prohibit the employee from “organizing
a competing firm” or “developing her own clients and consultants.”  Rugen, 864 S.W.2d at 551.  In Totino, the First Court
explained that “nonrecruitment
covenants do not significantly restrain the individual appellants’ trade or
commerce; the covenants merely prevent them from recruiting A&A’s employees
for two years while appellants carry on their trade with Corroon.”  Totino, 1998 Tex. App. LEXIS 5295, at *30.  The covenants did not “restrict
current A&A employees from leaving A&A or working with the individual
appellants;” “[t]he individual appellants simply may not recruit or solicit the
A&A employees.”  Id. at *32-33.

The injunction order in this case
prohibits Lockhart from soliciting and accepting business from Midlothian
clients and from disclosing Midlothian’s confidential information.  He is not
prohibited from “organizing a competing firm” or “developing [his] own clients
and consultants.”  Rugen, 864 S.W.2d at 551.  In fact, the order
expressly excludes Midlothian clients who transfer without Lockhart’s
solicitation and clients
Lockhart obtained before becoming employed with Midlothian.  We cannot say that the order is an
unreasonable restraint on trade.  We overrule issue three.

Vague and Confusing

In issue four, Lockhart complains that the
injunction order is “vague,” “amorphous,” “confusing,” “overbroad,”
“contradictory,” and “difficult to reconcile.”

Lockhart first contends that the order
is inconsistent because the trial court found that Midlothian established a
“probable right of recovery,” would “suffer irreparable injury,” and had no adequate
remedy at law, but that the order is not a final finding of a legal violation
of the contract, insurance solicitation activities after 2003, or any ongoing
or future violations.  “The issue before the trial court in a temporary injunction hearing is
whether the applicant may preserve the status quo of the litigation’s subject
matter pending trial on the merits.”  Health
Discovery Corp. v. Williams,
148 S.W.3d 167, 169 (Tex. App.—Waco 2004, no pet.) (emphasis added); see Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  It is not inconsistent for the trial court to find that Midlothian
established the right to a temporary injunction, yet clarify that the order is
not a ruling on the merits, i.e., a finding of any legal violations.

Lockhart next argues that the order “fails
to provide any meaningful way to define or understand what activity [he] can
engage in.”

Lockhart complains that the order fails
to define “Midlothian clients” and clients whom he served, dealt with,
“represented or conducted Midlothian-related business” with, “sold
insurance-related products prior to [2003],” and whose “relationship was
initiated and continuously existed – without interruption – from [ 2003]
through the termination date of the [employment contract].”  “Where
secret customer information was one of the main assets sought to be protected,
the trial court would defeat that purpose by requiring the public disclosure of
such information.”  Safeguard
Bus. Sys., Inc. v. Schaffer,
822 S.W.2d 640, 644 (Tex. App.—Dallas 1991, no writ); see Rollins v. Universal Coin & Bullion,
Ltd., No. 09-06-00150 CV, 2006 Tex. App. LEXIS 8764, at *16-17
(Tex. App.—Beaumont Oct. 12, 2006, no pet.) (mem. op.).  The order need not identify the
clients by name; it is reasonable to presume that Lockhart is “sufficiently
familiar with the employer’s business and its customers to avoid violating the
injunction.”   Schaffer, 822 S.W.2d at 644; see Rollins 2006 Tex. App. LEXIS 8764, at *16-17.

Lockhart also complains that (1) the
injunction order fails to define “insurance product-related business,”
“insurance product-related contact or communication,” “confidential
information,” “unfettered access,” or “initiating a sales relationship;” (2)
the phrases “insurance product-related business” and “insurance product-related
contact or communication” are overbroad; and (3) the injunction fails to
explain how he “served” clients, how “served” differs from “dealt,” whether
“Midlothian-related business” differs from “insurance product-related
business,” how “unfettered access” differs from regular access, to which
provisions the August 2007 date applies, the time period that applies to
initiating a sales relationship, the “said period” applicable to clients whom
he “served, dealt, and/or represented,” whether the clients he can serve must
meet all three criteria identified in the order, and how to apply the standard
for when “confidential information became known to [him].”

This level of detail, however, is not
required.  To satisfy the requirement that an injunction order be “specific in
terms,” the order “must
be as precise as possible to inform the defendant of the acts he is restrained
from doing.”  FH1 Fin.
Servs., 2007 Tex. App.
LEXIS 6502, at *8; San Antonio Bar Ass’n v. Guardian
Abstract & Title Co., 156 Tex. 7, 291 S.W.2d 697, 702 (1956).  The defendant should
not be required to draw inferences about which persons may differ to determine
what conduct is restrained.  FH1
Fin. Servs., 2007 Tex.
App. LEXIS 6502, at *8; see
San Antonio Bar Ass'n, 291 S.W.2d at 702. 
Nonetheless, an injunction must be broad enough to prevent repetition of the
conduct sought to be enjoined.  FH1
Fin. Servs., 2007 Tex.
App. LEXIS 6502, at *8; see
San Antonio Bar Ass'n, 291 S.W.2d at 702.

The order in this case specifically and
expressly explains the acts that Lockhart is enjoined from engaging in, and
even goes beyond this standard by explaining the conduct Lockhart may engage in. 
See FH1 Fin.
Servs., 2007 Tex. App.
LEXIS 6502, at *8; see also
San Antonio Bar Ass'n, 291 S.W.2d at 702.  The
order leaves nothing to conjecture. See FH1 Fin. Servs., 2007 Tex. App. LEXIS 6502, at *8; see also San Antonio Bar Ass'n, 291 S.W.2d at 702; Rugen, 864 S.W.2d at 553 (“The language in the [injunction] order
describes in reasonable detail the acts sought to be restrained.”).

Finally, Lockhart complains that the
order forbids him from using any Midlothian records or account information,
when he has already returned such documents to Midlothian and has neither a
need nor a desire to use such information.  Yet, the evidence at the hearing
established that such information would be advantageous to competitors.  It was
proper for the trial court to enjoin Lockhart from using such information
because he is still in a position to use it.  See Rugen, 864 S.W.2d at 552; see also T-N-T Motorsports v.
Hennessey Motorsports, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998,
no pet).  We overrule issue four.

            We affirm the trial court’s
injunction order.

  

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray dissenting with note)*

Affirmed 

Opinion
delivered and filed March 10, 2010 

[CV06]  

 

*           (Chief
Justice Gray dissents.  A separate opinion will not issue.  Chief Justice Gray
notes, however, that he would dismiss the proceeding for lack of jurisdiction
because the notice of appeal was not timely filed and no good cause for the
late filing was provided.  He therefore joins no part of the opinion and must
dissent to the judgment which affirms the trial court’s order although that
would be the practical effect of a dismissal.)









[1]               The clause states: 

 

Employee agrees that he/she will not
within a period of two (2) years following the date of his/her termination of
employment with the Agency, or his/her retirement therefrom, directly or
indirectly, by or for himself/herself or as the agent of another, or through
all others as his/her agent: (a) divulge the names of the Agency’s policy
holders or accounts to any other person, firm or Agency; (b) in any way seek to
induce, bring about, promote, facilitate, or encourage the discontinuance of or
in any way solicit for or on behalf of himself or others, or in any way quote
rates, accept, receive, write, bind, broker, or transfer any insurance
business, policies, risk or accounts, written, issued, covered, obtained
(whether through the efforts of the Employee or not) or carried by the Agency.





[2]               To some extent, Lockhart’s
first three issues challenge the enforceability of the non-compete clause.  When
a trial court grants a temporary injunction on the basis of a non-compete
clause, however, the issue on appeal is not whether the agreement is
enforceable.  See Loye v. Travelhost, Inc., 156 S.W.3d 615, 619 (Tex. App.—Dallas
2004, no pet.); see also FH1 Fin. Servs. v. Debt
Settlement Am., Inc.,
No.
10-06-00167-CV, 2007
Tex. App. LEXIS 6502, at *4-5 (Tex. App.—Waco Aug. 15, 2007, no pet.)
(mem. op.); Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 884-85
(Tex. App.—Dallas 2003, no pet.);  W.R. Grace & Co.-Conn v. Henson, No. 13-06-00668-CV, 2007 Tex. App. LEXIS
6771, at *11-12 (Tex. App.—Corpus Christi Aug. 23, 2007, no pet.) (mem. op.); Smith
v. Livingston Hearing Aid Ctr., Inc., No. 07-06-0204-CV, 2006 Tex. App. LEXIS
8231, at *3-6 (Tex. App.—Amarillo Sept. 18, 2006, no pet.) (mem.
op.).