**MANUFACTURERS HANOVER TRUST COMPANY, Appellant,**

v.

**KINGSTON INVESTORS CORPORA-TION, E. Peter Krulewitch, William Hitchcock, and Stanley Rothman, Appellees.**

No. 01–91–00769–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 29, 1991.

Charles R. Haworth, Mikel J. Bowers, Katherine Techmanski, Dallas, for appellant.

Tom Alan Cunningham, Houston, for appellees.

Before TREVATHAN, C.J., and COHEN and O'CONNOR, JJ.

## OPINION

TREVATHAN, Chief Justice.

This is an appeal from an interlocutory order granting a temporary injunction pursuant to § 51.014(4) of the Texas Civil Practice and Remedies Code. This Court is asked to determine whether the trial court abused its discretion when it temporarily enjoined appellant, Manufacturers Hanover Trust Company (MHT), from pursuing any

court proceedings in the State of New York against appellees, Kingston Investors Corp. (Kingston), E. Peter Krulewitch, William Hitchcock, and Stanley Rothman.

Fact Summary:

In 1983, MHT, a New York banking corporation, extended a line of credit for $500,000 to Kingston, a New York corporation, for the purpose of investing and developing real estate. The line of credit was guaranteed by the sole owners of Kingston, Peter Krulewitch, William Hitchcock, and Stanley Rothman (collectively the guarantors). Kingston executed a $4,860,601.18 note dated April 6, 1990 payable to MHT on demand. The purpose of the note was to renew the line of credit, which had reached a balance of $4,860,601.18. The guarantors each executed unconditional guarantees for full payment of the note. As of the date of the note, the full balance had been advanced to Kingston. The proceeds of the line of credit were used in part to improve real estate in Houston, Texas not owned by Kingston, or any of the guarantors. The property is owned by a separate legal entity, Kingston Houston Partner One Limited, a Texas limited partnership.[1] MHT has made demand on Kingston and on the guarantors. However, the full principal amount of the note is presently outstanding, and there have been no interest payments made since December 20, 1990.

By letter dated June 7, 1991, MHT offered to negotiate a work-out with Kingston. MHT told Kingston if it did not receive a response by June 14, 1991, it would pursue its legal rights, remedies, and privileges under the terms of the note and of the guarantees. Kingston responded on June 13, 1991, requesting a meeting in an effort to come to a negotiated settlement. MHT allegedly relied on this response, delayed filing an action in New York, and scheduled a meeting with Kingston's president, Krulewitch, on June 27, 1991.

On June 14, 1991, appellees filed an original petition in Texas for damages and injunctive relief, asserting appellant had fraudulently induced them into signing the note and the guarantees. That case will be referred to as the "Texas action." Appellees asserted MHT failed to disclose the financial condition of Alvin Dworman, another customer of MHT, who became involved in the real estate project after the note was executed. Appellees allege MHT, as the chief lender to Dworman and his various companies, knew Dworman would be unable to honor his commitment to provide additional funds and permanent financing for the project. Appellees contend MHT was aware of Dworman's financial crisis long before appellees executed the note and guarantees, and MHT had a duty to disclose this information to them.

The June 27, 1991, meeting failed to resolve the dispute. No mention was made of the petition filed on June 14, 1991. MHT then proceeded to file a notice of motion for summary judgment in lieu of complaint against appellees in a New York state supreme court, to recover amounts due and payable on the note and under the guarantees. Appellees were served with summons on July 1 and 2, 1991. On July 5, 1991, service of citation was made on the Texas Secretary of State for service on MHT.

A hearing was held on August 22, 1991, in the Texas action, where appellees argued MHT should be enjoined from proceeding in New York. On August 23, 1991, the trial court issued its order granting appellees application for temporary injunction. The trial court held the Texas action was the first filed action, that appellees had shown a substantial likelihood of prevailing on the trial of the cause, that appellees would suffer irreparable harm because they would be unable to present their alleged defenses on the note and guarantees in the New York action, and a judgment in New York "might" force the sale of real property in Texas.

MHT raises three points or error, which we will address as one. MHT contends the

1. Krulewitch, Hitchcock, and Rothman are the principals of this partnership. Kingston has no interest in the partnership.

trial court abused its discretion in granting the temporary injunction for the following reasons:

1. Appellees failed to establish the prerequisites for injunctive relief.

2. Appellees failed to satisfy the requirements for issuance of an anti-suit injunction.

3. The evidence established that appellees should be estopped from asserting that the Texas action should be given priority as the first filed action.

Prerequisites for Injunctive Relief:

■ At a hearing on an application for temporary injunction, the only question before the trial court is whether the applicant is entitled to preserve the status quo, pending trial on the merits. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). The applicant for an injunction must plead a cause of action, show a probable right to recover the relief sought, and probable injury in the interim. *Sun Oil Co. v. Whitaker,* 424 S.W.2d 216, 218 (Tex.1968). The applicant must further show that no adequate legal remedy exists. In order for a legal remedy to be adequate, it must give the applicant complete, final, and equitable relief. *David v. Bache Halsey Stuart Shields, Inc.,* 630 S.W.2d 754, 756 (Tex.App.—Houston [1st Dist.] 1982, no writ); *King v. Miller,* 280 S.W.2d 331, 333 (Tex.Civ.App.—Eastland 1955, writ ref'd n.r.e.).

■ Because an appeal of an order granting or denying a temporary injunction is an appeal from an interlocutory order, the merits of the movant's case are not presented for appellate review. Our review is strictly limited to whether there has been a clear abuse of discretion. *Iranian Muslim Org. v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981); *Philipp Bros., Inc. v. Oil Country Specialists, Ltd.,* 709 S.W.2d 262, 265 (Tex.App.—Houston [1st Dist.] 1986, writ dism'd). An abuse of discretion occurs when the trial court misapplies the law to established facts or when the evidence does not reasonably support the conclusion that the applicant has a right to recovery. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.

1975); *Miller v. K & M Partnership,* 770 S.W.2d 84, 87 (Tex.App.—Houston [1st Dist.] 1989, no writ). MHT argues the trial court abused its discretion in granting the temporary injunction. We agree.

a. *Probable Right to Recovery:*

■ A review of the evidence reveals appellees did not demonstrate a probable right to recovery, a probable injury in the interim, or that there was no adequate remedy at law. The basis of appellees' lender liability suit is that MHT fraudulently induced them to execute the note and its guarantee by failing to disclose the financial condition of Dworman. The allegation of fraud in the inducement alone, however, is not a defense to a suit on a note and, therefore, does not itself show a right of probable recovery. *Town North Nat'l Bank v. Broaddus,* 569 S.W.2d 489, 491 (Tex.1978). Appellees were required to clearly demonstrate trickery, artifice, or device to support a defense of fraud in the inducement. *Id.; see also Texas Export Dev. Corp. v. Schleder,* 519 S.W.2d 134, 139 (Tex.Civ.App.—Dallas 1974, no writ). Appellees made no such allegations and demonstrated no such potential evidence.

■ Appellees contend MHT knew of their reliance on Dworman for the eventual permanent financing of the Houston project, and MHT had a duty to disclose its knowledge of Dworman's weakening financial condition. However, appellees so far have alleged no facts that would tend to show that any special or confidential relationship existed between them and MHT, other than one of borrower and lender, that would impose a duty to disclose upon MHT. As a general rule, a bank and its customers do not have such a relationship. *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962). It is well settled that the relationship between a borrower and its lender is neither a fiduciary relationship, nor a special relationship. *Victoria Bank & Trust Co. v. Brady,* 779 S.W.2d 893, 902 (Tex.App.—Corpus Christi 1989, *aff'd in part, rev'd on other grounds,* 811 S.W.2d 931 (Tex.1991). Moreover, the supreme court has rejected the contention that an implied duty of good

faith and fair dealing exist in every contract. *English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983). Such a duty is recognized only where the contract between the parties expressly provides such a duty or where there is a special relationship between the parties to the contract. *Manges v. Guerra*, 673 S.W.2d 180, 183 (Tex.1984). The evidence presented at the temporary injunction hearing made no showing of such a relationship between appellees and MHT. Even if MHT had knowledge of appellees' reliance on Dworman's financing, appellees failed to present any evidence showing MHT had any duty to disclose Dworman's financial condition. Thus, appellees failed to show any probable right of recovery.

### b. *Irreparable Harm:*

The trial court found if MHT continued with the proceeding in New York, appellees would suffer irreparable harm because a judgment "may" be rendered against appellees and that such judgment "might" force the sale of the Houston project at price below its fair market value.

The law is well settled that a trial court abuses its discretion in granting a temporary injunction unless it is clearly established by the facts that one seeking such relief is threatened with an actual irreparable injury if the injunction is not granted. *Dallas Gen. Drivers v. Wamix, Inc.*, 295 S.W.2d 873, 879 (Tex.1956). Moreover, an injunction will not lie to prevent injury that is purely conjectural. *Otten v. Town of China Grove*, 660 S.W.2d 565, 569 (Tex.App.—San Antonio 1983, writ dism'd).

The evidence presented does not support the conclusion that a judgment in New York would force the sale of the Houston property. It is undisputed the note and guarantees are not secured by this property. In fact, appellees never purchased the Houston project. The property

was purchased, and is owned, by a separate legal entity, Kingston Houston Partner One Limited, a Texas limited partnership, who is not before this Court. There is no basis for speculating that a judgment on the note and guarantees would force the sale of the property. Testimony of "fear," "apprehension," and "possibilities" is not sufficient to establish any injury, let alone irreparable harm. *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex.1983). Appellees failed to show probable irreparable injury.

### c. *Adequate Remedy at Law:*

A temporary injunction will not lie if the movant fails to establish that no adequate remedy at law exists. *Recon Exploration, Inc. v. Hodges*, 798 S.W.2d 848, 851 (Tex.App.—Dallas 1990, no writ). The trial court found appellees would be unable to pursue or have heard in New York the claims they brought in Texas. However, appellees are clearly entitled to make a full showing in the New York action as to why the New York state court should not enter a summary judgment on a promissory note.[2] N.Y.Civ.Prac.L. & R. 3213 (McKinney 1970). Under rule 3213, a defendant is entitled to file papers and raise whatever defenses might be available. If summary judgment is inappropriate, the motion is denied, the case is converted to an ordinary action, and the moving and answering papers are deemed the complaint and answer. *Id.* Appellees presented no evidence that they would be precluded from asserting their defense in New York. Moreover, appellees have available a plea in abatement in the New York court and can present arguments why that court should not proceed as a matter of comity, until there is a final judgment in Texas. Therefore, there was an adequate remedy at law for appellees by raising issues of material fact to defeat the summary judgment, and by filing a plea to abate the New York action until a final judgment in Texas was entered.

2. The note and guarantees were executed in New York and by their terms are controlled by New York law.

**612**

Anti-suit Injunction:

 Texas courts are empowered to issue injunctions to prevent parties from going forward with litigation in a sister state. *Moton v. Hull,* 77 Tex. 80, 13 S.W. 849, 849 (1890). The principle of comity, however, requires that courts exercise this equitable power sparingly, and only in very special circumstances. *Gannon v. Payne,* 706 S.W.2d 304, 306 (Tex.1986); *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161 (Tex.1986). A party seeking to enjoin an out-of-state lawsuit must show that clear equity demands the Texas court's intervention. *New Process Steel Corp. v. Steel Corp. of Texas,* 638 S.W.2d 522, 526 (Tex. App.—Houston [1st Dist.] 1982, no writ); *PPG Indus., Inc. v. Continental Oil Co.,* 492 S.W.2d 297, 300 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). The circumstances of each situation must be carefully examined to determine whether an injunction is required to prevent an irreparable miscarriage of justice. *Gannon,* 706 S.W.2d at 307.

 The factual situation here fails to reveal any of those unique issues which would justify sacrificing comity. Appellees are entitled to present any defenses in the New York action to prevent summary judgment, including fraud in the inducement. MHT has no mortgage to foreclose upon, and appellees do not own the property in question. The viability of the project is, therefore, not threatened by a possible judgment in New York on the note and guarantees. An anti-suit injunction may even be justified when the injunction will prevent a multiplicity of suits or will protect a party from vexatious or harassing litigation. *University of Texas v. Morris,* 162 Tex. 60, 344 S.W.2d 426, 428 (1961). Some courts have issued anti-suit injunctions to protect their own jurisdiction or to prevent evasion of important public policies of the forum nation. *Gannon,* 706 S.W.2d at 307. The record is silent as to these types of circumstances. A single parallel proceeding in foreign forum simply does not constitute a multiplicity nor does it, in itself, create a clear equity justifying an anti-suit injunction. *See Gannon,* 706

S.W.2d at 307; *University of Texas,* 344 S.W.2d at 428.

The totality of circumstances shown in this record does not indicate that clear equity justified the Texas court's intervention in the New York action. Nothing in the record prevents both of these lawsuits from proceeding simultaneously, as they ordinarily should. *Gannon,* 706 S.W.2d at 306.

Since we believe appellees failed to establish the prerequisites for injunctive relief, nor did they show any special circumstances or clear equity necessary to enter an anti-suit injunction, appellant's points of error one and two are sustained. We need not decide whether appellees are estopped to assert that the Texas action was first.

We reverse the trial court's order granting the temporary injunction; the temporary injunction is hereby dissolved.

Motion for contempt:

On September 10, 1991, appellees filed a motion for contempt of court to secure enforcement of the temporary injunction issued by the trial court. This Court issued an order, on September 11, 1991, stating the motion would be taken with the case. In light of our decision to dissolve the temporary injunction, we hold the motion for contempt of court is moot.