ACCEPTED
15-25-00001-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/13/2025 10:46 PM
CHRISTOPHER A. PRINE
CLERK

**Case No. 15-25-00001-CV**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
5/13/2025 10:46:29 PM
CHRISTOPHER A. PRINE
Clerk

# COURT OF APPEALS
# FOR THE
# FIFTEENTH DISTRICT OF TEXAS – AUSTIN

## CREATEAI HOLDINGS INC.,

**Appellant,**

v.

## BOT AUTO TX INC.,

**Appellee.**

**On Appeal from the 11th Judicial District of the Business Court
of Harris County, Texas
Honorable Sofia Adrogué, President Judge**

## REPLY BRIEF OF APPELLANT
*Oral Argument Requested*

**Timothy J. McCarthy**
State Bar No. 24123750
tmccarthy@dykema.com
**Cliff P. Riley**
State Bar No. 24094915
criley@dykema.com
**Salvador J. Robles**
State Bar No. 24121800
srobles@dykema.com
**Aaron J. Kotulek**
State Bar No. 24137483
akotulek@dykema.com

**Isaac Villarreal**
State Bar No. 24054553
ivillareal@dykema.com
DYKEMA GOSSETT PLLC
5 Houston Center
1401 McKinney St., Suite 1625
Houston, Texas 77010
Telephone: (713) 904-6900
Facsimile: (214) 462-6401

DYKEMA GOSSETT PLLC
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellant:** | **CreateAI Holdings, Inc. (formerly known as TuSimple Holdings, Inc.)** |
| **Trial & Appellate Counsel:** | **Timothy J. McCarthy** |

State Bar No. 24123750
tmccarthy@dykema.com
**Cliff P. Riley**
State Bar No. 24094915
criley@dykema.com
**Salvador J. Robles**
State Bar No. 24121800
srobles@dykema.com
**Aaron J. Kotulek**
State Bar No. 24137483
akotulek@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
214.462.6400

**Isaac Villareal**
State Bar No. 24054553
ivillareal@dykema.com
**DYKEMA GOSSETT PLLC**
5 Houston Center
1401 McKinney St., Suite 1625
Houston, Texas 77010
713.904.6900

| | |
|---|---|
| **Appellee:** | **Bot Auto TX, Inc.** |
| **Trial & Appellate Counsel:** | **Joseph A. Fischer, III** |

tfischer@jw.com
Texas Bar No. 00789292
**Tori C. Emery**
temery@jw.com
Texas Bar No. 24126228
**JACKSON WALKER, LLP**
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4530

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .......................................................... iii

TABLE OF CONTENTS.................................................................................iv

TABLE OF AUTHORITIES ............................................................................v

BRIEF IN REPLY .........................................................................................1

I.     The Trial Court Erred in Denying the Injunction.............................................1

     A.     CreateAI sufficiently identified trade secret information entitled to protection.................................................................................1

     B.     CreateAI sufficiently established a probable right to relief. .................9

          i.     *Trade secrets were acquired through improper means.* ...........10

          ii.     *The trade secrets are being used and/or are threatened to be used by Bot Auto.* ....................................................................12

     C.     CreateAI sufficiently identified a probable, imminent, and irreparable injury. ............................................................................13

          i.     *Harm presumed.* ...................................................................13

          ii.     *Even if harm is not presumed (though it is), there is still evidence of probable, imminent, and irreparable injury.* .........18

CONCLUSION...........................................................................................23

CERTIFICATION OF COMPLIANCE ..............................................................25

CERTIFICATE OF SERVICE ........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bianco v. Globus Med., Inc.*,
No. 2:12-CV-00147-WCB, 2014 U.S. Dist. LEXIS 35256 (E.D. Tex. Mar. 17, 2014) ...............................................................................................................20

*Centennial Bank v. Holmes*,
717 F. Supp. 3d 542 (N.D. Tex. 2024) .............................................................2

*GlobeRanger Corp. v. Software AG USA, Inc.*,
836 F.3d 477 (5th Cir. 2016) ....................................................................*passim*

*IAC, Ltd. v. Bell Helicopter Textron, Inc.*,
160 S.W.3d 191 (Tex. App.—Fort Worth 2005, no pet.)..........................*passim*

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002) ...........................................................................3

*Injection Research Specialists, Inc. v. Polaris, L.P.*,
Nos. 97-1516, 97-1545 & 97-1557, 1998 U.S. App. LEXIS 18745 1998 WL 536585 (Fed. Cir. Aug. 13, 1998).....................................................................9

*Manufacturers Hanover Trust Co. v. Kingston Inv. Corp.*,
819 S.W.2d 607 (Tex. App.—Houston [1st Dist.] 1991, no writ) ......................2

*Nichia Corp. v. Everlight Elecs. Co.*,
No. 02:13-cv-702-JRG, 2016 U.S. Dist. LEXIS 8378 (E.D. Tex. Jan. 25, 2016) ....................................................................................................................22

*T-N-T Motorsports v. Hennessey Motorsports*,
965 S.W.2d 18 (Tex. App.—Houston [1st Dist.] 1998).........................11, 13, 17

*VariChem Int'l, Inc. v. Riddle's Delhi & Chem. Serv. Co.*,
No. 4:24-cv-1784, 2025 U.S. Dist. LEXIS 47212 (S.D. Tex. 2025) ...................7

*Vianet Grp. PLC v. Tap Acquisition, Inc.*,
No. 3:14-CV-3601-B, 2016 U.S. Dist. LEXIS 108296, 2016 WL 4368302
(N.D. Tex. Aug. 16, 2016)................................................................................3

*Wellogix, Inc. v. Accenture*,
L.L.P., 716 F.3d 867 (5th Cir. 2013) ......................................................4, 5, 6, 9

*Williams v. Compressor Eng'g Corp.*,
704 S.W.2d 469 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)......19

**Other Authorities**

*Comput. Scis. Corp. v. Tata Consultancy Servs* ........................................................6

## BRIEF IN REPLY

**I.  The Trial Court Erred in Denying the Injunction.**

**A.  CreateAI sufficiently identified trade secret information entitled to protection.**

Bot Auto incorrectly argues that CreateAI is not entitled to an injunction because it failed to sufficiently identify the trade secrets in dispute and because the trade secrets are publicly available via patents held by CreateAI. However, both of Bot Auto's arguments fail. *__First__*, Bot Auto's demand that CreateAI "describe the precise information at issue with reasonable particularity" fails because it relies on inapplicable federal court cases, not Texas authority.  And the inapplicable federal law upon which Bot Auto relies pre-dates the Fifth Circuit's seminal case on this issue. As shown below, the Fifth Circuit has held on numerous occasions that a plaintiff does not need to plead a specific description of the trade secrets in dispute. *GlobeRanger Corp. v. Software AG USA, Inc.*, 836 F.3d 477, 493 (5th Cir. 2016).[1]

*__Second__*, to the extent Bot Auto claims CreateAI disclosed its trade secrets in various patents, it was Bot Auto's burden to identify said patents and describe how the patents publicly disclosed trade secrets. Bot Auto has not done so. In sum, CreateAI

---

[1] Knowing the unfavorable (but governing) state of Texas law, Bot Auto heavily relies on federal court cases having no binding effect on this Court.  CreateAI nevertheless cites to federal authorities because CreateAI's trade secret descriptions satisfy the standards established by the federal court cases as well.

sufficiently identified its trade secrets in compliance with relevant authority and Bot Auto failed to meet its burden that any patents disclose the trade secrets.

To be entitled to a temporary injunction, an applicant must plead a cause of action, show a probable right to recover on that cause of action, and show a probable injury in the interim. *Sun Oil*, 424 S.W.2d at 218; *Manufacturers Hanover Trust Co. v. Kingston Inv. Corp.,* 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ). However, a "plaintiff's definition of a trade secret cannot be too vague or inclusive." *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 561 (N.D. Tex. 2024) (quoting *Utex Indus. Inc. v. Wiegand*, No. H-18-1254, 2020 U.S. Dist. LEXIS 29791, 2020 WL 873985, at *10 (S.D. Tex. Feb. 21, 2020)). Yet, a plaintiff <u>does not</u> need to provide a specific description of the trade secret. *GlobeRanger Corp. v. Software AG USA, Inc.*, 836 F.3d 477, 493 (5th Cir. 2016). It is sufficient if the allegations demonstrate "that at least some aspects" of the information at issue constitute a trade secret. *Id.* at 492-93. Consequently, courts routinely find a plaintiff's allegations to be sufficient if they "<u>identify specific groupings of information that contain trade secrets, identify the types of trade secrets contained in the groupings, and explain how the alleged trade secrets were maintained and treated as trade secrets.</u>" *See Centennial Bank*, 717 F. Supp. 3d, at 561 (citing *Vianet Grp. PLC v. Tap Acquisition, Inc.*, No. 3:14-CV-3601-B, 2016 U.S. Dist. LEXIS 108296, 2016 WL 4368302, at *20 (N.D. Tex. Aug. 16, 2016) (emphasis added); *Utex Indus., Inc.*, 2020 U.S. Dist.

LEXIS 29791, 2020 WL 873985, at *10). For example, in *Vianet Group PLC v. Tap Acquisition, Inc.*, the district court found that identification of specific documents along with a summary that the "documents contain[ed] trade secrets related to[] 'customer information [and] financial data'" was sufficient. 2016 U.S. Dist. LEXIS 108296, 2016 WL 4368302, at *19-20.

CreateAI has amply described the trade secrets it is claiming were misappropriated, including expanding and elaborating at the request of Bot Auto multiple times (although it did not have to). Bot Auto heavily relies on an opinion from the Seventh Circuit, *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002), that indicates a 43-page description of the methods and processes of an alleged trade secret was not specific enough. Initially, *Epic Sys. Corp* has no bearing on this Court because (1) it is a federal court case, not a Texas authority, and (2) the Fifth Circuit, which would be the governing appellate court were the case at bar in federal court, has held that "a specific description of the trade secret" is not required. *GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 493 (5th Cir. 2016). In *GlobeRanger*,

> GlobeRanger offered testimony about its unique source code for iMotion and other proprietary software, and how a "secret code" was required for each customer's database… detailed how the company worked to keep its software "contractually, as well as physically and electronically" protected, including: restricting physical access to the data center; requiring double password protection to access the "source code control system;" limiting access to source code only to developers rather than all employees; and licensing requirements for the software.

3

And the unique license key required to access a particular product… that a license key it provided was only for maintenance of the current installation and not any other purpose.

836 F.3d at 492.

The *GlobeRanger* court held that "a jury could reasonably conclude that at least some aspects of [GlobeRanger's product] constituted a 'formula, pattern, device or compilation of information' GlobeRanger used to 'obtain an advantage over competitors who do not know or use it." *Id.* at 492-93.

*Wellogix, Inc. v. Accenture, LLP* is informative and similar to the issues here as well. *See* 716 F.3d 867 (5th Cir. 2013). In *Wellogix*, the plaintiff was the creator of software that "allowed oil companies to 'plan, procure, and pay for complex services'—all online." *Id*. at 873. The software featured: "dynamic templates" that adjusted cost and supply estimates based on "intelligence built into" the underlying source code; a "workflow navigator" that provided a framework for planning and procuring services; and "electronic field tickets" that allowed suppliers to record information about orders. *Id*.

In providing said services to oil companies, plaintiff contracted with defendants to assist with accounting and marketing services. Defendant then began offering plaintiff's "complex services" without notifying plaintiff and without obtaining plaintiff's permission. Plaintiff then brought suit against defendants for, *inter alia*, trade secret misappropriation. The case ultimately went to a jury trial

4

wherein the jury returned a unanimous verdict in favor of plaintiff in excess of $94 million. Aside from a remittitur in punitive damages, the district court entered judgment on the verdict. Defendant appealed, presenting the same arguments used here by Bot Auto—namely, that plaintiff failed to establish a trade secret and that the trade secret was disclosed by patents held by plaintiff. The Fifth Circuit affirmed the jury's verdict.

In affirming, the Fifth Circuit found that the plaintiff "presented sufficient evidence and testimony to support the jury's finding that [plaintiff's] technology contained trade secrets." In so finding, the court stated:

> [Plaintiff] presented sufficient evidence and testimony to support the jury's finding that [plaintiff's] technology contained trade secrets. [Plaintiff] showed that, because it was the only company offering complex services software from 2000 to 2005, its software—and, in particular, the underlying proprietary source code—gave it "an opportunity to obtain an advantage over competitors." [Plaintiff] also showed that the six *Bass* factors weigh in its favor. For example, [Plaintiff] introduced evidence that it "guard[ed] the secrecy of" its technology by placing its software behind a firewall, and sharing it subject to confidentiality agreements. [Plaintiff] also introduced evidence that its technology had "value" because other companies partnered with [Plaintiff], and… third-party investors valued [Plaintiff] at more than $27 million.

*Id.* at 875 (citations omitted).

The Fifth Circuit then went on to address the defendant's claim that the trade secrets were disclosed in patents. In rejecting the defendant's patent argument, the Fifth Circuit held that "a patent destroys the secrecy necessary to maintain a trade

secret only when the patent and the trade secret both cover the same subject matter." *Id*. (internal cites and quotations omitted). Further, the court held that it was defendant's burden to show that disclosure destroys the secret and that defendant failed to meet this burden by failing to put forth evidence of any patents that cover the same subject matter as the trade secrets. *Id*.

Further, in *Comput. Scis. Corp. v. Tata Consultancy Servs*, the district court denied defendant's summary judgment motion based on alleged failures to sufficiently identify trade secrets. Civil Action No. 3:19-CV-0970-X, 2023 U.S. Dist. LEXIS 10825 (N.D. Tex. 2023). Relying on *GlobeRanger*, the court rejected the defendant's arguments demanding specificity and, instead, found that the plaintiff sufficiently identified its trade secrets when the plaintiff "identifie[d] 'five [] categories of functionality within Vantage and CyberLife that [defendant] specifically targeted to develop [the] BaNCS platform: calculations; business rules; data structures; correspondence; and interfaces.'" *Id*. at 10. The court noted that district courts have applied *GlobeRanger*'s reasoning "broadly," citing examples wherein courts have held a plaintiff may "properly identif[y] its entire Platform as a trade secret" and a "plaintiff's identification of eight categories of types of information and possible trade secrets within was sufficiently specific." *Id*. at 11 (citations and quotes omitted).

6

Yet further, in *VariChem Int'l, Inc. v. Riddle's Delhi & Chemical Serv. Co.*, the court stated:

> In a case similar to the case at bar, this Court found that the plaintiff's description of its alleged trade secrets to be sufficiently pleaded. There, the plaintiff's complaint defined trade secrets under DTSA as: its profit and loss information, financial information, business plans, strategic growth strategies, sales information, operational weaknesses, marketing strategies, customer information, pricing, pricing strategies, sales volume, operational plans, employee compensation, vendor and contractor information, testing procedures, certificates, and laboratory technology. <u>It also described its trade secrets under TUTSA as: M&M Division financial information, operational processes, pricing, customer lists, customer contact information, sales strategies, growth strategies, laboratory technology, laboratory equipment lists, employee compensation information, and contractor information</u>. **This Court found defendant's argument that the plaintiff must identify what compilation of customer contact information, which cost and pricing data, which customer history and preferences ..., what laboratory equipment lists, testing procedures, or certificate templates constitute trade secrets to be <u>unavailing</u>.**

*VariChem Int'l, Inc. v. Riddle's Delhi & Chem. Serv. Co.*, No. 4:24-cv-1784, 2025 U.S. Dist. LEXIS 47212, at *9 (S.D. Tex. 2025) (internal citations and quotations omitted) (emphasis added).

*Wells v. Tex. Tech. Univ.* is informative and helps distinguish the above cases by giving an example of when a trade secret has not been sufficiently identified. No. 24-10518, 2025 U.S. App. LEXIS 4914, at *17 (5th Cir. 2025). In that case, unlike here, the plaintiff merely stated – in conclusory fashion – that her research was a trade secret. *Id*. at 17-18. The plaintiff did not allege the extent in which the information is known within her industry, the value of the information, the amount

7

of effort or money expended to develop the information, the difficulty with which the data could be acquired or duplicated, and there is no mention regarding whether the information derives independent economic value from not being generally known or readily ascertainable.

Applying the preceding authorities to the case at bar, it is evident that CreateAI has sufficiently identified its trade secrets—at the time of filing its Petition, in the Stipulation and Order agreed to by the Parties and signed by the Court, again in its Answers to Interrogatory No. 1, and again when it amended its Interrogatory No. 1. See, e.g., CR0007; CR0858-0862. CreateAI has described its trade secrets in enough detail for Bot Auto to identify the specific trade secrets it misappropriated. Further, CreateAI produced documents and elicited testimony which specified some of the propriety technology at issue, its design, purpose, and functionality, and the confidential nature of the technology as well as steps CreateAI took to keep that information confidential. See, e.g., 8RREX124; 7RREX57; 7RREX63; 7RREX65 (examples of documents detailing the technology and trade secrets at issue); 7RREX66 (Employee Handbook); 7RREX15 (Employee Proprietary Information and Inventions Agreement); 7RREX12 (National Security Agreement); 8RREX118 (NSA compliance report, bearing Hou's signature); 5RR205:9-208:15 (testimony of Cheng Lu) (describing policies and practices pertaining to confidentiality of proprietary information); 5RR117:8-24 (Hou admitting signing the EPIIA);

5RR236:05-237:01 (addressing the fact that Hou signed the compliance report and thus knew the entire panoply of policies and procedures to protect trade secret information and covered IP). CreateAI also produced a declaration from Cheng Lu, the Chief Executive Officer of TuSimple Holdings, which further details the proprietary technology. CR0040-0051.

Bot Auto asserts that CreateAI's trade secrets are "publicly available and not adequately protected," pointing mostly to the fact that CreateAI has a large patent portfolio for some of its technology. Brief of Appellant at 45-46. However, CreateAI is not obligated to distinguish its trade secrets from its patented technology. *Wellogix, Inc. v. Accenture*, L.L.P., 716 F.3d 867, 875 (5th Cir. 2013) ("Although Accenture maintains that it was Wellogix's burden to show that the patents did not cover the same subject matter, Accenture does not cite, nor could we find, case law imposing such a burden."). Further, the court in *Injection Research Specialists, Inc. v. Polaris, L.P.* held that it is for the defendant, once a plaintiff makes a prima facie case for the existence of a trade secret, to show that disclosure destroys the secret. *See*, Nos. 97-1516, 97-1545 & 97-1557, 1998 U.S. App. LEXIS 18745 1998 WL 536585, at *8-9 (Fed. Cir. Aug. 13, 1998).").

## B.    CreateAI sufficiently established a probable right to relief.

Bot Auto argues that CreateAI failed to establish a probable right to relief because it alleges CreateAI failed to establish Bot Auto acquired trade secrets

9

through improper means and failed to prove any use or threatened use of the trade secrets. Bot Auto's arguments ignore key evidence showing Bot Auto's misappropriation and status as a competitor of CreateAI. *See* Brief of Appellant at 42-48. Indeed, Bot Auto's Response belies the obvious—an executive of CreateAI that had access to confidential information relating to autonomous driving technology, departed CreateAI and simultaneously started a new company (Bot Auto) with several prior CreateAI employees, and said new company engages in the same and/or similar niche business of innovating autonomous driving technology. Brief of Appellant at 10-16. Even appellee's name—"Bot Auto"—is indicative of autonomous driving technology, which is the core of what CreateAI is alleging Bot Auto misappropriated. Moreover, evidence that includes Bot Auto's own records reveals that CreateAI's trade secret information has both appeared and is being actively exploited by Bot Auto. Brief of Appellant at 42-46. Thus, CreateAI overwhelmingly proved a probable right to relief by putting on evidence that Bot Auto obtained CreateAI's trade secrets through improper means and that CreateAI's trade secrets are being used and/or there is a threatened use of the trade secrets by Bot Auto.

### i. *Trade secrets were acquired through improper means.*

As discussed in Appellant's Brief at length, Bot Auto was founded by the same individual who co-founded TuSimple (now known as CreateAI): Xiaodi Hou.

Brief of Appellant at 17. Hou not only co-founded the company, but also played a pivotal role in developing CreateAI's technology and the trade secrets that are the subject of this case. Brief of Appellant at 9. Texas law is clear: all elements of injunctive relief are met when former employees possess confidential information and are in a position to use it. *T-N-T Motorsports v. Hennessey Motorsports*, 965 S.W.2d 18, 23-24 (Tex. App.—Houston [1st Dist.] 1998). Hou and the over thirty CreateAI employees who left to join Bot Auto—after Hou solicited them—were responsible for the development of CreateAI's Suite Technology over the course of seven years and more than $1 billion of research and development. CR0011; CR0013; CR0027. Thus, they were and are still in possession of CreateAI's confidential information. They then used that information to create Bot Auto, which is evident merely by the fact that Bot Auto purportedly "developed" the same technology in a fraction of the time and cost. CR0021; CR0026. Moreover, Bot Auto's own documents support CreateAI's assertion. Brief of Appellant at 42-46. For example, Bot Auto's own documents revealed that it is using the same dual-CAN Bus design and architecture as CreateAI's to achieve redundancy in its braking system. Brief of Appellant at 42-43. Moreover, evidence revealed that Bot Auto has misappropriated the Autonomous Decision-Making Technology developed by CreateAI over seven years and with 10 million miles of road trip data. Brief of Appellant at 5-6, 44-45. For these reasons, the evidence supports that Bot Auto,

11

through Hou and the over thirty former CreateAI employees, acquired CreateAI's trade secrets through improper means.

### ii. The trade secrets are being used and/or are threatened to be used by Bot Auto.

CreateAI has shown, at length, that the Defendant-Appellee is not only "in possession of [the Appellant's] confidential information and is in a position to use it," but is, in fact, exploiting that trade secret information now. *See, e.g.,* 6RR154:12-157:6 and APP0019-APP0022 (establishing possession and use, by Bot Auto, of Appellant's Automatic Safety System Trade Secrets); *supra* at pp. 44-46 (setting forth overwhelming evidence of misappropriation of Autonomous Decision-Making Technology Trade Secrets). The independent documentary evidence and testimony of Mr. Lu and Hou, himself, undeniably indicates that the Defendant has, in fact, misappropriated Appellant's highly valuable proprietary information. Brief of Appellant at 41-42. For instance, documentary evidence and testimony revealed that CreateAI spent approximately $1.4 billion to develop self-driving technology, Hou signed the Employee Proprietary Information and Inventions Agreement ("EPIIA"), Hou has a history of disregarding information security controls, and Bot Auto has miraculously leapt past several stages of product development that normally takes years of work. Brief of Appellant at 41, 47.

## C. CreateAI sufficiently identified a probable, imminent, and irreparable injury.

### i. Harm presumed.

Bot Auto argues that a presumption of harm is not appropriate here because the cases cited by CreateAI in its appellant's brief are distinguishable. *See* Brief of Appellee at 51. In so arguing, Bot Auto alleges that there is no evidence that CreateAI has trade secrets, that Bot Auto is in possession of CreateAI's trade secrets, or that Bot Auto is a competitor of CreateAI. *See* Brief of Appellee at 51. As a result, Bot Auto argues there can be no presumption of harm. *Id.* However, Bot Auto's arguments are unavailing and are contrary to the evidence, record, and binding authority, as explained above and below. Both cases discussed by Bot Auto—that is, *Bell Helicopter* and *T-N-T*—support a presumption of harm in CreateAI's favor. *See* Brief of Appellant at 34-38.

### *IAC, Ltd. v. Bell Helicopter Textron, Inc.*

Bot Auto attempts to distinguish *Bell Helicopter* by arguing that, in that case, there was evidence that "a *competitor* actually *possessed* and *was using* the *trade secrets* at issue…." *See* Brief of Appellee at 53. **First**, as explained above, CreateAI has put on sufficient evidence that it maintains trade secrets worthy of protection. Just like in *Bell Helicopter*, CreateAI put on evidence regarding (1) measures taken to protect the confidentiality of proprietary trade information (2) CreateAI expended significant money on developing its autonomous trucking technology, (3) the

13

technology is highly valuable, and (4) the technology is difficult to be duplicated by others. *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 198-199 (Tex. App.—Fort Worth 2005, no pet.); Brief of Appellant at 2-8.

**Second**, Bot Auto is a competitor of CreateAI. In *Bell Helicopter*, the plaintiff and defendant were both in the business of creating helicopter blades, hence they were considered competitors. *Id*. at 199-200. Here, CreateAI and Bot Auto are both in the business of developing autonomous driving technology, thus they are competitors. Brief of Appellant at 24. To the extent Bot Auto argues that they are no longer competitors because CreateAI has started exploring other industries, the argument ignores the fact that CreateAI is a forerunner in autonomous trucking with market-leading technology, which puts it in an advantageous position to secure investments in further developing its AI technology, profit from the technology, and maintain goodwill with clients due to being a market leader. *See* Brief of Appellant at 2. Allowing Bot Auto to continue misappropriating its technology will result in CreateAI losing its technological advantage, its profits, and its goodwill with clients that trust them to have the leading technology.

**Third**, CreateAI established that Bot Auto is in possession of its trade secrets. In *Bell Helicopter*, the defendant became aware of the trade secrets through its work with the plaintiff. Id. at 199. The plaintiff shared the trade secrets with the defendant pursuant to a confidentiality agreement. *Id.* Subsequent to learning the trade secrets,

14

a principal of defendant partnered with a third party to produce a product similar to plaintiff's. *Id*. The evidence showed that the plaintiff disclosed and defendant had access to the information pursuant to the work defendant was doing for plaintiff and the confidentiality agreement between the parties, and the product produced was similar to the plaintiff's. *Id*. As a result, the court found that the evidence supported "a reasonable inference that [defendant] acquired the [trade secrets] through a breach of [defendant's] confidential relationship with [plaintiff]." *Id*. Importantly, much like *Bell Helicopter*, it is undisputed that Bot Auto's founder, Xiaodi Hou, previously worked for CreateAI in an executive position and had access to and did possess knowledge regarding CreateAI's trade secrets. That, alone, is sufficient to warrant a finding of possession for an injunction. *See HMS Holdings Corp*., 2016 Tex. App. LEXIS 3131, 2016 WL 1179436, at *4 ("Evidence that a former employee possesses confidential information and is in a position to use it against the employer supports the issuance of an injunction" . . . "regardless of whether the information is contained in the documents ***or in the employee's brain***.") (emphasis added). Aside from the undisputable proposition that Bot Auto's founder had access to and knowledge of CreateAI's trade secrets, Bot Auto's own documents also showed that Bot Auto does, in fact, have, and is, in fact, exploiting CreateAI's proprietary technology. Brief of Appellant at 42. Further, evidence showed that Bot Auto is

15

creating a product similar to CreateAI's (autonomous driving technology), much like the defendant in *Bell Helicopter*. Brief of Appellant at 45.

**Fourth**, CreateAI put forth evidence of Bot Auto using or threatening to use CreateAI's trade secrets. Brief of Appellant at 41-46, 50. In *Bell Helicopter*, the plaintiff put on evidence that the defendant was using some of the confidential information that the plaintiff disclosed to defendant to create products similar to plaintiff's outside of those actually authorized by plaintiff to create. *Id*. at 199-200. Further, the plaintiff put on evidence that the defendant used materials and specifications that were unique to plaintiff's product. *Id*. Similarly here, CreateAI put forth overwhelming evidence that Bot Auto misappropriated and is actively exploiting CreateAI's proprietary technology and trade secret information, including CreateAI's Sensor Suite Technology, Autonomous Decision-Making Technology, and Automatic Safety Systems Technology. Brief of Appellant at 41-46, 50.

As a result of evidence similar to that shown in this case, the court in *Bell Helicopter* found that the defendant possessed plaintiff's trade secrets and was in a position to use them; consequently, the court held that harm was presumed. *Id*. at 200. Therefore, much like *Bell Helicopter*, this Court should determine that Bot Auto is in possession of CreateAI's trade secrets and is in a position to use them and find that harm is presumed.

### *T-N-T Motorsports v. Hennessey Motorsports*

Like *Bell Helicopter*, Bot Auto also attempts to distinguish *T-N-T* by incorrectly arguing that Bot Auto does not possess CreateAI's trade secrets and is not in a position to use them. *See* Brief of Appellee at 53-54. Moreover, Bot Auto's contention that "[t]he present facts could not be more different" than the facts in *T-N-T* could not be further from the truth. *See* Brief of Appellee at 54.

In *T-N-T*, two employees who acquired knowledge of plaintiff's trade secrets subsequently left their employment with plaintiff, formed their own business, and immediately began competing with plaintiff by creating, marketing, and selling parts similar to the plaintiff's trade secrets. *T-N-T Motorsports v. Hennessey Motorsports*, 965 S.W.2d 18, 20-24 (Tex. App.—Houston [1st Dist.] 1998). Thus, the court held that the two employees "possess[ed] [plaintiff's] confidential information and [were] in a position to use it to compete directly with [plaintiff]." *Id*. at 23-24.

To distinguish *T-N-T*, Bot Auto relies on self-serving testimony that its systems are different than CreateAI's, Bot Auto created its system from the ground up, and that Bot Auto does not have access to and is not using CreateAI's trade secrets. *See* Brief of Appellee at 54. Aside from the expected testimony of Bot Auto, the objective evidence put forth by CreateAI shows that Bot Auto does possess CreateAI's trade secrets and is in a position to use them. Brief of Appellant at 41-46. As explained in the section above, and much like the facts of *T-N-T*, Bot Auto

17

possesses and exploits CreateAI's trade secret information, including but not limited to CreateAI's semantic regime for the annotation of road trip data and its annotation process design, which is the core of CreateAI's Autonomous Decision-Making Technology—developed over seven years and 10 million miles of driving—that decides how to handle complex driving scenarios. Brief of Appellant at 45. This is further evidenced by Bot Auto's claims that it will achieve "driver-out" operations in approximately one year instead of the seven years it took CreateAI. Brief of Appellant at 16.

### ii. Even if harm is not presumed (though it is), there is still evidence of probable, imminent, and irreparable injury.

Bot Auto attempts to argue that CreateAI has not shown probable, imminent, and irreparable injury, but Bot Auto has already admitted in its own brief that "a probable TUTSA claim demonstrates a potential harm as a matter of law." Brief of Appellee at 60. CreateAI has already shown (more than probable) evidence that Bot Auto is actively exploiting CreateAI's trade secret information. Brief of Appellant at 41-48. Indeed, CreateAI pointed out that Bot Auto's *own documents* show misappropriation of multiple trade secrets by Bot Auto, including CreateAI's Automatic Safety Systems Technology, redundant steering system, and Autonomous Decision-Marking Technology. *Id.* at 42-46. This more than satisfies a showing of probable, imminent, and irreparable injury.

Additionally, Bot Auto alleges that CreateAI has somehow implicitly conceded that it won't face actual harm, but this allegation ignores CreateAI's arguments that it has spent approximately $1.4 billion to develop self-driving technology only to have its trade secret technology misappropriated by Bot Auto. *See* Brief of Appellee at 61; Brief of Appellant at 41. Furthermore, Bot Auto's allegations that CreateAI has conceded actual harm ignores how Texas courts find that even "[t]he threatened disclosure of trade secrets constitutes irreparable injury as a matter of law." *Bell Helicopter Textron, Inc.*, 160 S.W.3d at 200; *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 471 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Harm may be presumed when a defendant possesses trade secrets of another and is in a position to use them. *Bell Helicopter Textron, Inc.*, 160 S.W.3d at 200. Therefore, not only has CreateAI alleged actual harm but Texas law supports that there is irreparable harm here as a matter of law.

Bot Auto also incorrectly alleges that CreateAI's TUTSA claims are speculative or merely fear or apprehension of the possibility of injury. *See* Brief of Appelee at 62. This allegation ignores that CreateAI has alleged and has shown sufficient evidence that Bot Auto has already misappropriated CreateAI's technology, is continuously exploiting it, and that CreateAI continues to be harmed by the misappropriation and exploitation by Bot Auto. Brief of Appellant at 41-48. A claim cannot be mere speculation or fear when it is already happening.

19

In its argument, Bot Auto cites to the *Bianco* case, but this case actually supports a finding for injunctive relief because here the two parties have competing technology in autonomous trucking and CreateAI's profits, brand, and goodwill will be injured by Bot Auto's misappropriation of its trade secrets. *Bianco v. Globus Med., Inc.*, No. 2:12-CV-00147-WCB, 2014 U.S. Dist. LEXIS 35256, at *15-19 (E.D. Tex. Mar. 17, 2014) (noting in a trade secrets case that "courts have held that the plaintiff's status as a competitor or noncompetitor of the defendant weighs heavily in the court's determination whether to grant injunctive relief."). The court in *Bianco* only found that the parties were not competitors because the plaintiff there "will not lose profits, [] will not lose market share to a competitor, and [] is not subject to the loss of brand recognition or good will in the market as a result of the misappropriation of his trade secrets." *Bianco*, 2013 U.S. Dist. LEXIS 35256, at *17. However, CreateAI will lose profits and is subject to loss of brand recognition and goodwill as a result of the misappropriation because CreateAI is actively looking for investors and customers for its technology. Brief of Appellant at 41. Furthermore, Bot Auto cites to an unfair competition case, *Legacy Home Health Agency*, in support of its speculation argument which ignores that in a trade secrets claim, which is at issue here, threatened disclosure of trade secrets is irreparable injury as a matter of law. Brief of Appellee at 62.

Moreover, Bot Auto's allegations that CreateAI's injury is not imminent because of its entrance into a new industry only attempts to address one of the many harms that CreateAI has suffered from Bot Auto's misappropriation of trade secrets. *See* Brief of Appellee at 62-64. It completely ignores that this is technology developed after $1.4 billion in investment and CreateAI's efforts to realize the value of its technologies in collaboration with prominent global investment banks. Brief of Appellant at 41. Bot Auto's misappropriation of CreateAI's trade secrets actively damages CreateAI's efforts to capitalize on its trade secrets, making the harm imminent and ongoing. Furthermore, because there is irreparable injury as a matter of law due to the threatened disclosure of trade secrets, any delays in bringing the lawsuit are irrelevant, especially when CreateAI is here litigating now in an attempt to protect its interests. *Bell Helicopter Textron, Inc.*, 160 S.W.3d at 200.

Bot Auto incorrectly alleges that any injury CreateAI faces is compensable with money damages. Brief of Appellee at 64. CreateAI has market-leading autonomous trucking technology developed over seven years and with 10 million miles of vehicle travel, making the technology priceless. 8RREX124; 7RREX57; 7RREX63; 7RREX65; 5RR288:9-15; 6RR77:06-78:09. Allowing Bot Auto to misappropriate its trade secrets to develop competing products would harm CreateAI's goodwill with its clients. *Bell Helicopter Textron, Inc.*, 160 S.W.3d at

21

200 (holding that creation of a competing product would undermine goodwill with clients and "lead[] to an incalculable loss of business goodwill.").

As part of its argument, Bot Auto cites to *Nichia Corp* to make a misguided argument that efforts to license technology are evidence that CreateAI is willing to accept money over exclusivity. *See* Brief of Appellee 65. However, the difference in this case before the Court can be seen on its face because the plaintiff in *Nichia Corp* had already licensed its patent to 41% of the market including its significant competitors and major threats of its products. *Nichia Corp. v. Everlight Elecs. Co.*, No. 02:13-cv-702-JRG, 2016 U.S. Dist. LEXIS 8378, at *190-91 (E.D. Tex. Jan. 25, 2016). Additionally, in *Nichia Corp*, there were "multiple low-priced non-infringing alternatives from competitors available to replace the accused [misappropriated] products." *Id. Nichia Corp* is vastly different from the case here because CreateAI has not licensed its technology to nearly half the market, has not licensed its technology to significant competitors, and has no major threats to its technology absent through misappropriation of its trade secrets. The advantageous position that CreateAI's market leading technology gives it and its goodwill with clients will be irreparably injured if Bot Auto is allowed to continue its use of misappropriated technology.

# CONCLUSION

For these reasons, the trial court erred in denying Appellant's request for temporary injunction. Appellant has sufficiently identified trade secret information entitled to protection, a probable right to relief, and a probable, imminent, and irreparable injury. Appellant thus respectfully requests that this Court enter its ruling and mandate, reversing the Order of the Court below denying Appellant's application for temporary injunction, and remanding the matter to the trial court with instructions to enter the requested injunction prohibiting the further dissemination of that trade secret information, and granting such other and further relief as may be deemed just and proper.

Dated:  May 13, 2025                Respectfully submitted,

By: */s/ Timothy J. McCarthy*

**Timothy J. McCarthy**
State Bar No. 24123750
tmccarthy@dykema.com
**Cliff P. Riley**
State Bar No. 24094915
criley@dykema.com
**Salvador J. Robles**
State Bar No. 24121800
srobles@dykema.com
**Aaron J. Kotulek**
State Bar No. 24137483
akotulek@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

**Isaac Villarreal**
State Bar No. 24054553
ivillareal@dykema.com
**DYKEMA GOSSETT PLLC**
5 Houston Center
1401 McKinney St., Suite 1625
Houston, Texas 77010
Telephone: (713) 904-6900
Facsimile: (214) 462-6401

*Attorneys for Appellant,*
*CREATEAI HOLDINGS, INC.*

24

## CERTIFICATION OF COMPLIANCE

The undersigned certifies this brief complies with the type-face and length requirements of rule 9.4 of the Texas Rules of Appellate Procedure. Exclusive of the exempted portions stated in rule 9.4(i)(l), the brief contains 5,390 words, as calculated by Microsoft Word, the program used to prepare this document.

*/s/Cliff P. Riley*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record pursuant to the Texas Rules of Appellate Procedure on this 13th day of May, 2025.

Joseph A. Fischer, III
Leisa Talbert Peschel
Tori C. Emery
JACKSON WALKER LLP
1401 McKinney, Suite 1900
Houston, TX 77010
tfisher@jw.com
lpeschel@jw.co
temery@jw.com

Richard Liu (*Pro Hac Vice)*
Innovative Legal Services, P.C.
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Richard.liu@consultils.com

*/s/ Cliff P. Riley*

4933-2125-1138.4

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kathy Lowery on behalf of Timothy McCarthy
Bar No. 24123750
KLowery@dykema.com
Envelope ID: 100798237
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellant
Status as of 5/14/2025 7:06 AM CST

Associated Case Party: Bot Auto TX Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nicole Burkholder | | nburkholder@jw.com | 5/13/2025 10:46:29 PM | SENT |
| Leisa Peschel | 24060414 | lpeschel@jw.com | 5/13/2025 10:46:29 PM | SENT |
| Leisa Peschel | 24060414 | lpeschel@jw.com | 5/13/2025 10:46:29 PM | SENT |
| Alli Allman | | aallman@jw.com | 5/13/2025 10:46:29 PM | SENT |
| Joseph AFischer, III | | tfischer@jw.com | 5/13/2025 10:46:29 PM | SENT |
| Victoria Emery | 24126228 | temery@jw.com | 5/13/2025 10:46:29 PM | SENT |
| Victoria Emery | 24126228 | temery@jw.com | 5/13/2025 10:46:29 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joseph Fischer | 789292 | tfischer@jw.com | 5/13/2025 10:46:29 PM | SENT |
| Yvonne Ferrari | | yferrari@jw.com | 5/13/2025 10:46:29 PM | SENT |
| Juana Sauceda | | jsauceda@jw.com | 5/13/2025 10:46:29 PM | SENT |
| Richard Liu | | richard.liu@consultils.com | 5/13/2025 10:46:29 PM | SENT |

Associated Case Party: TuSimple Holdings, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Cliff PRiley | | criley@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Cliff PRiley | | criley@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Christopher Kratovil | | ckratovil@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Christopher Kratovil | | ckratovil@dykema.com | 5/13/2025 10:46:29 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Kathy Lowery on behalf of Timothy McCarthy
Bar No. 24123750
KLowery@dykema.com
Envelope ID: 100798237
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellant
Status as of 5/14/2025 7:06 AM CST

Associated Case Party: TuSimple Holdings, Inc.

| Christopher Kratovil | | ckratovil@dykema.com | 5/13/2025 10:46:29 PM | SENT |
|---|---|---|---|---|
| Isaac Villarreal | | ivillarreal@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Kathy Lowery | | klowery@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Jennifer Schmitt | | jschmitt@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Lina Null | | lnull@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Amanda Gordon | | agordon@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Amanda Gordon | | agordon@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Salvador Robles | | SRobles@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Lina Null | | lnull@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Aaron Kotulek | | akotulek@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Jennifer Schmitt | | jschmitt@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Timothy J.McCarthy | | TMcCarthy@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Kathy Lowery | | klowery@dykema.com | 5/13/2025 10:46:29 PM | SENT |
| Isaac Villarreal | | ivillarreal@dykema.com | 5/13/2025 10:46:29 PM | SENT |